CHIEF JUSTICE HARDIN
delivered the opinion oe the court.
This action of the commonwealth against the Evansville, Henderson & Nashville Railroad Company was instituted by the attorney-general for the recovery of the sum of $8,828.86 for taxes alleged to be due from the corporation, under the act “to tax railroads, turnpike-roads, and other corporations, in aid of the sinking fund,” approved February 20, 1864. (Myers’s Supplement, 480.)
That act provides “ that the several railroads in this commonwealth, their depots, grounds, and improvements, with the right of way, engines, rolling-stock, and other improvements for the uses and purposes of the road, are hereby assessed for taxation at the rate of twenty thousand dollars per mile. The president and directors of each road shall annually, on or before the 10th day of July, return under oath to the auditor of public accounts a statement of the length of the road and branches belonging to them, and pay the treasurer the same rate of tax on the assessment as is levied by law on real estate.”
It appears that, with a view of complying with the requirements of the foregoing statute, the president of the company, by his written statement addressed to the auditor, and verified *440 on the 22d day of September, 1871, reported to that officer as follows: “ The number of miles of said railroad from the city of Henderson, Ky., to Guthrie, Ky., on the state-line, running through Kentucky, and subject to taxation, is ninety-eight miles and five hundred and twenty-eight feet; that there are no branches belonging to said railroad.”
By the twenty-second section of the company’s charter, granted in 1867, it is provided that “the said railroad company shall pay such taxes to the state upon their road, stock, and other property as is paid by other railroad companies in this state; but no tax shall be required to be paid ’ until the said company should have completed their road from Henderson to the Tennessee state-line.”
There was, however, another corporation, styled the Henderson & Nashville Railroad Company, chartered in 1851, with authority to construct and operate a railroad from Henderson to Nashville. It organized under its charter, and at much expense made considerable progress toward the construction of the road, but finally abandoned the work; and after the new corporation was formed it purchased the road-bed thus commenced for the bed of its own road, together with the right of way and other property of the old company.
The new corporation having thus succeeded to the rights of property of the old one, the General Assembly passed an act in 1868 with reference to said purchase, containing the following provision, which was accepted:
“Section 1. That the franchises and rights of the old Henderson & Nashville Railroad Company, purchased by the Evansville, Henderson & Nashville Railroad Company, are hereby granted to the Evansville, Henderson & Nashville Railroad Company.”
The 46th section of the charter of the old corporation is as follows:
“The capital stock in the said company, the contingent *441 fund aforesaid, the dividends on the capital stock, the road and its branches, the fixtures, depots, workshops, warehouses and depositories, and locomotives and all vehicles or means of transportation or travel belonging to the said company, shall be forever exempt from taxation in each of the states of Tennessee and Kentucky; and it shall not be lawful for either of the said states, or any corporate or municipal, police, or other authority thereof, or of any town, city, county, or district thereof, to impose any tax on such stock or dividends, property or estate; provided, the stock or dividends, when said dividends shall exceed the legal interest of the state, may be subject to taxation by the state in common with and at the same rate as money at interest or interest thereon; and when the state shall impose a tax on the dividends declared in favor of the stockholders of the company the tax shall extend only to such proportion of the said dividends and capital stock as the part of the road in that state shall bear to the whole road from the profits of which the said dividends have arisen, which tax, when imposed, shall be retained by the board of directors out of said dividends and paid to the state; but no tax shall be imposed so as to reduce the part of the dividends to be received by the stockholders below the legal interest of the state.”
It further appears that on or about the 1st of March, 1871, the road was so far completed between Henderson and Guthrie as to admit of the regular passage of freight and passenger-trains over it between those points; and although work was afterward done on the road-bed tending to facilitate the transportation of passengers and freight and render it more safe, the road was practically in operation and open for the use of the public, for the usual rates of compensation, continuously after that'time. The foregoing statement of the facts, whether affecting the one side or the other, is either admitted by the pleadings or sufficiently alleged and proved.
*442 The case was by consent of the parties submitted to the court for trial without the intervention of a jury, and that trial resulted in a judgment in favor of the commonwealth, to reverse which the corporation prosecutes this appeal.
The first question to be determined, and, as we conceive, the most important one involved (it not being restricted in its effects to the claim for taxes for the year 1871), is, did the appellant, by its purchase of the rights, franchises, and property of the old company, and by its acceptance of the provisions of the act of 1868, become entitled as a matter of right to the immunity from ordinary taxation secured to the old company by the 46th section of its charter?
In the case of The Philadelphia & Wilmington Railroad Company v. The State of Maryland (10 Howard, 376) the Supreme Court of the United States held, as we think in accordance with correct principle and the weight of authority, “that the taxing power of a state is never presumed to be relinquished unless the intention to relinquish is declared in clear and unambiguous terms.” And in Bradley v. McAtee, &c., and the City of Louisville (7 Bush, 667) this court, after quoting the foregoing language of the Supreme Court with approval, added, “And even then the state will not be irrevocably bound, unless some duty is imposed upon the tax-payer as the consideration of the grant which the citizens of the state are not generally required to perform, or unless by the exemption he is induced to embark in some enterprise or to invest his means in some adventure which, if successful, will result advantageously to the state as well as to himself.”
The original charter of the defendant, so far from exempting its road from taxation, expressly provides that it shall pay taxes to the state like other railroad corporations whose roads and property are within its jurisdiction; and as the act of 1868 neither expressly repeals that part of the charter nor confers on the appellant the immunity claimed in this case, it is plain *443 that if the legislature intended to grant the supposed exemption at all, that intention must be deduced by implication from the grant to, the appellant, in the act of 1868, of “the franchises and rights ” of the old company, purchased by the new one. We can not give to this language the comprehensive construction contended for in the argument for the appellant.
The charter, containing a provision for taxing its property, was granted and accepted independently of the old corporation which had proved unsuccessful; and it has neither alleged nor proved that in accepting the provisions of the act of 1868 it undertook to perform any duty to the state in consideration of the supposed exemption, or that it was thereby induced to do any thing of peculiar advantage to the state. We must conclude therefore, upon principle and in view of the authorities we have cited, that the road and property of the appellant are not exempted by law from taxation.
It is further insisted for the appellant that the judgment is in amount excessive and erroneous; that in 1871 the general rate of taxation on real estate was not forty-five cents on the one hundred dollars in value, as assumed in the judgment, but only thirty cents, and that the court erroneously included in the judgment the sum of fifteen cents on the one hundred dollars which was exclusively taxable on the property of white people for the special purpose of supporting common-schools for the education of white children — an object wholly different from those of the sinking fund, to which, by the act of 1864, the money was all appropriated; and that the tax to the extent of said fifteen cents on the one hundred dollars was not only unauthorized by the statute, but as to all colored persons owning stock in the corporation, whose children were not admitted to the common-schools, was simply taking private property for a public use without compensation, and therefore it was spoliation in the guise of taxation. This argument is certainly, in both of its aspects, ingenious and plausible; *444 but, considered with reference to the pleadings and evidence in this case, it is, in our opinion, rather specious than sound.
If the meaning of the legislature, in declaring in the act of 1864 that the rate of tax assessed on the property of railroads, valuing them at twenty thousand dollars per mile, should be the same as that “ levied by law on real estate,” admitted of serious doubt as to so much of the tax as was equivalent to the common-school tax on real estate, it seems to us that whatever difficulty there might have been in construing the statute arising either out of the restricted application of the benefit of the common-school fund or the incompatibility of its object with those of the sinking fund, that difficulty is removed by the amendatory act- of March, 1867. (1 Session Acts, 62.) The eighth section of that act provides “that all money paid into the treasury under the provision of this act and the act to which it is an amendment shall be for the ordinary expenses of the government.”
If, however, the objection should still be made to rest on the fact that under existing laws for fostering the common-school system some part of the money arising from the tax in this case may be made beneficial to the white race alone, we could not regard this possible cause of inequality in the burden of the tax as sufficiently proximate and certain to authorize a decision against the constitutionality of the tax. It is worthy of observation, moreover, that it does not appear by either allegation or proof that any of the stockholders in this railroad company are colored persons.
Again, the constitutionality of the tax is questioned on the ground of inequality, because it appears that other railroads in the state, particularly the Louisville & Nashville and the Louisville, Cincinnati & Lexington railroads, are of greater value per mile than the road of the appellant. But waiving other reasons for rejecting this argument, which might be sustained on the authority of numerous decisions, we deem it *445 sufficient to say that while the evidence shows the other railroads mentioned and their property to be worth more than twenty thousand dollars per mile, and therefore discloses a reason for increasing the assessment of those roads, it wholly fails to prove that the appellant’s road is not of the value of twenty thousand dollars per mile.
The only remaining inquiry to be considered is as to the defendant’s liability to be taxed at all for the year 1871. This involves a question of fact as well as one of law. Without entering into a review of the evidence relative to the completion of the road from Henderson to Guthrie, which has been referred to in our statement of the case, it is sufficient to say that it authorizes the judicial conclusion that the entire road between those points was “ completed ” about the 1st of March, 1871, within the meaning of the 22d section of the appellant’s charter relating to its liability to taxation.
But it is argued that railroads, being real estate, and taxable as such, according to a valuation fixed by law, at twenty thousand dollars per mile, the right to tax them is governed by the general revenue law, which provides (R. S., sec. 10, art. 6, chap. 83) that “all estate taxed according to its value shall be valued in gold and silver, as of the 10th day of January preceding,” and that therefore their liability to taxation for any particular year depends not merely on their condition or state of completion, as required to be reported by their presidents and directors on the 10th of July, but upon their ownership and condition on the 10th of the preceding January. That the general law (sec. 10, supra) has particular reference to property ordinarily assessed by the county commissioners of tax is apparent from the fact that it requires the owner or possessor of property to “list it with the assessor, and remain bound for the tax, notwithstanding he may have sold or parted with the same.” And while this or some other uniform regulation should have been provided with a view to *446 the action of assessing officers, there is no reason that we can perceive why the legislature might not have fixed some other day than the 10th of January from and after which revenue should be payable by corporations and others who from the nature of their business and property could be more convenient! y assessed than through the agency of county officers; and although the act of 1864 is somewhat ambiguous as to the time to which, in cases like this, the liability to assessment should relate, the most reasonable and fair interpretation of that act seems to us to be that the right to impose the tax depends on the state of the subject of taxation on the 10th of July, and not the 10th of January. This construction is not, in our opinion, materially affected by the amendatory act of 1867, specifically regulating the taxation of various other corporations than those mentioned in the act of 1864.
Wherefore the judgment is affirmed.