CASE 88—ACTION BY CITY OF LOUISVILLE AGAINST THE MENGEL BOX COMPANY FOR CITY TAXES.—MARCH 1.

# Mengel Box Co. v. City of Louisville.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.  REVERSED.

TAXATION— MANUFACTURING  COMPANY— EXEMPTION— STATUTES — CONSTRUCTION—INDUCEMENT  TO  INDUSTRIES—NEW  BUSINESS— WHAT CONSTITUTES.

Held:   1. Under authority of Const., section 170, and Kentucky Statutes, 1903, section 2980a; a city ordinance exempted from taxation for five years any manufacturing establishment permanently locating and continuing within the city.  A box manufacturing company had decided to close out its business, had ceased to make any new contracts, and was merely running for the purpose of completing unfinished contracts, when a corporation was organized which purchased the plant and entered on the manufacture of boxes.  A number of the incorporators of the new corporation were members of the old corporation.  HELD, that

Mengel Box Co. v. City of Louisville.

there was an establishment of a manufacturing business by the new corporation, within the meaning of the ordinance.

AUGUSTUS E. WILLSON, for appellant.

J. PARKER, GIBSON, MARSHALL & GIBSON, of counsel.

### CLASSIFICATIONS.

1. The appellant is exempt from municipal taxation for a period of five years. Constitution of Ky., sec. 170; Kentucky Statutes, sec. 2980a; Ordinances of City of Louisville for 1899, pp. 310-11, quoted on pp. 22-3 of R.

2. The construction of statutes must be governed by the intention of the Legislature; the occasion of and necessity for the law, the mischief felt and the remedy in view: Oakland v. Oakland Water Front Co., 118 Cal., 160; People v. Chicago Theological Seminary, 174 Ill., 177; U. S. v. Trans-Missouri Freight Assn., 53 Fed. Rep., 440; Edward v. Morton, 46 S. W. Rep., 792; Troy v. Denver, 53 Pac. Rep., 256; Collins v. State, 171 U. S., 30; In re Mitchell, 52 Pac. Rep., 799; Chandler v. Berry, 73 Miss., 437; Yale v. McClaron, 66 Miss., 416; Coates v. Worthy, 72 Miss., 575; Corning v. Commrs., 102 Fed. Rep., 57; Jay v. School Dist., 62 Pac. Rep., 250; Gunning v. People, 86 Ill., 174; Com. v. Grinstead, 55 S. W. Rep., 720; Croomer v. State, 51 S. W. Rep., 929; Flower v. Doland, 6 Pa. Sup. Ct., 586; Brown v. Turner, 54 N. E. Rep., 510.

3. Statutes having for their object the increase of manufacturing industries and for that purpose exempting them temporarily from taxation, are construed most liberally. Colton v. Montpelier, 71 Vt., 413, 345, A. 1039 (1900); Waterbury v. Atlas Cordage Co., 7 So. Rep., 783 (42 La. An., 723); State v. Assesors, 26 So. Rep., 872; Brown University v. Granger, 36 Atl. Rep., 720.

4. Such a statute, when it has induced any action on the part of the supposed beneficiary, becomes a contract between him and the State: Santa Fe Co. v. New Mexico, etc., R. R. Co., 2 Pac. Rep., 376 at pages 380 and 381; North American Photo Co. v. State Board, 54 N. J. L., 430.

5. In Virginia whenever there is a doubt as to the meaning of any tax law, it must be construed most strongly against the government and in favor of the citizen. Brown v. Com., 98 Va., 333; Broad v. Tallant, 56 Va., 723; Supervisors v. Tallant, 96 Va., 723, at page 726; Plainer v. Flournoy, 88 Va., 1029.

6. As to identity of old and new corporation and meaning of "new establishment." And. Dict. of Law, 671; 20 Am. & Eng.

Mengel Box Co. v. City of Louisville.

Ency of Law (1st ed.), 313; Langhorn v. Richmond City. R. Co., 10 S. E. Rep., 122 (Va., '94); Vilas v. Milwaukee Ry. Co., 17 Wis., 497; Church v. Brownwell, 5 Hun. (N. Y.), 464; Cary v. Schoharie Valley R. R. Co., 4 T. & C., (N. Y.), 285; Morgan County v. Thomas, 76 Ill., 120; Maxwell v. Bastrup Mfg. Co., 7 Tex., 237; Mills County v. Brown County, 87 Tex., 475; Pollard v. Kibbe, 14 Pet. (U. S.), 364; U. S. v. Bromley, 58 Fed. Rep., 554; Hobbs v. Dance, L. R., 9 C. P., 30; James v. Wetherell, J. P., 725; Meadows v. Taylor, 24 Q. B. D., 717; Barlow v. Kensington, 27 Ch. D., 381.

7. By "location" or "establishment" is meant the selection and use of lands, etc. Waldron v. Mercier, 82 Ill., 553; Boston Ry. Co. v. Middlesex, 121 Mass., 489; Richmond v. Henrico County, 83 Va., 204; Davison v. Lanier, 4 Wall. (U. S.), 447, at page 454.

8. It is held in New York that the test of exemption is properly whether new capital is invested in the business. Eastern Bermuda Asphalt Co. v. State, 61 N. Y. App. Div., 373, at page 376.

9. The exemption from taxation applies to real estate previously taxed, which is used by the new manufacturing company. Franklin Needle Co. v. Town of Franklin, 18 Atl. Rep., 319, N. H., 1890, 118 Mass., 164.

H. L. STONE, CITY ATTORNEY, FOR APPELLEE.

The facts proven by C. C. Mengel, president of the appellant company, show conclusively that the property of the. appellant assessed for taxation and on which the tax bills sued on were made out, belonged to the old corporation known as "C. C. Mengel, Jr. & Bro. Co.," and had been used for the manufacture of boxes for many years in the city of Louisville, prior to its transfer to the appellant, Mengel Box Company. C. C. Mengel, Jr., was one of the incorporators of the new company, and all the stockholders in the old company became stockholders in the new company except one, named J. M. Baker. All except this one stockholder took the value of the property thus transferred in stock in the new company. The court will bear in mind that none of the property of the new company, aside from this property which was transferred from the old company, has been assessed by the city assessor for municipal taxes. This part of its property only which was transferred from the old company to the new company has been assessed for taxation, and on that assessment the tax bills sued on were made out. A large part of the property of the appellant, Mengel Box Com-

pany, acquired under the enlargement of its capital, and situated in the city of Louisville, has not been assessed for taxation at all. All of the property assessed and on which the tax bills sued on were made out belonged to the old company, both the real and personal property. The old company was established in 1886. Of the $200,000 worth of property transferred to the new concern, $94,000 consisted of real estate alone. The rest of this $200,000 consisted of machinery and buildings in Louisville, St. Louis, and at Trimble, Tenn. All but $10,000 of the $94,000 worth of real estate, that is to say, real estate of the value of $84,000, was situated in the city of Louisville. About $36-000 of personal property, consisting of machinery, etc., was located in Louisville. So the value of the real estate, improvements and machinery, situated in the city of Louisville, that went into the $200,000 transferred, was $120,000. The assessments of the real estate and personal property as set out in the eight tax bills sued on only amount to $87,703 . . . as of September 1, 1899, for the fiscal year ending August 31, 1900. The statement, verified by C. C. Mengel August 16, 1899, only fifteen days before the assessment day, September 1, 1899, shows that the fair cash value of the appellant's real estate in the city of Louisville at that time was $125,000 and of its personal estate, consisting of lumber, boxes, machinery, etc., $94,000, or in all $214,000. So the assessments as set forth in the tax bills sued on are $130,297. . . . less than the actual value as set forth in the verified statement of C. C. Mengel made an exhibit with his deposition. The property was certainly not over-taxed, but was assessed far under its actual value.

Under the evidence in the record and on the authority of the case of City of Middlesboro v. New South Brewing & Ice Co., *supra*, as well as the strict construction that should be given to the ordinance under which appellant claims exemption, it is respectfully submitted that the judgment of the court below should be affirmed.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

This action involves the right of appellant to the five years' exemption from taxation authorized by section 170 of the Constitution, section 2980a of the Kentucky Statutes of 1903, and the ordinance passed in pursuance thereof. The C. C. Mengel, Jr., & Bro. Company is a corporation of Louisville, Ky., carrying on a lumber business. Prior to 1899,

it, in connection with its chief business, was also engaged in box making, and had a plant for that purpose, representing, in round numbers, an investment of $200,000. The principal customers of the corporation, for boxes, were the tobacco manufacturers; and when, subsequently, these went into a combine, there being no longer any competition in the purchase of boxes, their manufacture became so unprofitable that it resolved to go out of that business. This determination was not carried out immediately, owing to the existence of certain unfinished contracts, which had to be fulfilled before the enterprise could be actually stopped, but it was finally and definitely determined that it should be abandoned at the end of the contracts in question, and the property constituting the plant sold for whatever it would bring in money, and the proceeds distributed among the stockholders. About this time C. C. Mengel, Jr., conceived the idea of forming a new corporation, to consist in large part of foreign capital, which he successfully carried into execution; the result being the organization of the Mengel Box Company under the laws of the State of New Jersey, with a capital stock at first of $1,000,000, subsequently increased to $1,500,000. After its organization, the question as to where it should be located came up for determination—the foreign incorporators being inclined to St. Louis, rather than Louisville. But, the latter city being the home of Mengel, he insisted that it should be located there, and, as an inducement for so doing, represented that the new plant would be entitled to five years' exemption from municipal taxation; and, that there might be no mistake on this score, he addressed a letter to the city attorney, setting forth the facts, and asking whether or not he was correct in the assumption that the new corporation would be entitled to the exemption. In

reply the city attorney, after setting forth a summary of the law bearing upon the question, said: "In my opinion, in the case you put, of a concern organized in another State, if it desires to manufacture in this city, wares or goods, it can come to this city and acquire the property of another manufacturing concern, or any one else, and being a new establishment, so far as the city of Louisville is concerned, or its location having been induced by the ordinance aforesaid, such concern will be entitled to the exemption from taxation. In other words, it makes no difference whether the establishment comes from another State, or is organized under the laws of this State, its coming into the city limits and locating is the condition precedent to its being entitled to the benefit of the exemption provided in said ordinance. The whole object of the ordinance is to increase the manufacturing interests of the city and to induce the location of the same within its limits." In pursuance of the ordinance relating to the subject-matter, the president of the new corporation filed his affidavit with the city assessor, setting forth all of the facts connected with the organization and establishment of the proposed corporation and the location of its plant; thus, in every movement, keeping in touch with the city authorities, and acting in accordance with their advice. After the establishment of the plant, this action was instituted by the city for the purpose of recovering taxes on the property for the year 1900. The corporation answered, pleading the exemption, and that alone is the question for adjudication. The evidence in the case consists of the testimony of C. C. Mengel, Jr., the letter of the city attorney, the articles of incorporation of appellant, and the affidavit filed with the assessor in pursuance with the terms of the ordinance.

The law regulating the subject in hand consists of this provision, contained in section 170 of the Constitution: "The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location." Section 2980a of the Kentucky Statutes (being a part of the act regulating cities of the first class): "That the general council shall have power by ordinance to exempt from municipal taxation, for a period not exceeding five years, manufacturing establishments, as an inducement to their location within the city limits." And an ordinance passed in pursuance of this authority, which is as follows: "That in order to induce the location of more manufacturing establishments within the city limits, any such establishment, owned and operated by any person, firm, or corporation, which shall have been, after the passage of the act authorizing this ordinance, permanently located and conducted within the limits of the city of Louisville, shall be and the same is hereby exempted for a period of five years after such location and the commencement of the business of manufacturing thereat, from all taxation whatever by the city of Louisville, on all property, real or personal, tangible or intangible, owned, employed and used by such person, firm or corporation, in conducting the business of such manufacturing establishment, and which would otherwise be subject to city taxation: provided, however, the exemption herein specified is granted on the condition that the person, firm, or corporation, owning and operating such manufacturing establishment, shall comply with the provisions of the third section of this ordinance, and no such establishment shall be entitled to an exemption from city

taxes until said section is complied with. . . ." Section 3: "That any person, firm, or corporation, that shall be induced by the provisions of section 1, or section 2, of this ordinance, to locate or bring a manufacturing establishment within the city limits, shall, prior to the first day of September next, after said establishment shall have been located or brought within this city and begun the business of manufacturing thereat, file with the city assessor a written statement, verified by the proprietor, or one of them, if composed of a firm, or by the chief officer or manager in charge of the corporation, as the case may be, showing the following facts, viz.: The name of the proprietor, or of the members of the firm or corporation owning and operating the establishment; the place where the establishment is located within the city; the kind of manufacturing engaged in, and when begun at such location; and that the manufacturing establishment is a new one, or has been located or brought within the city limits since the passage of the act authorizing the ordinance; that it has been thus located or brought within the city in good faith, with the intention of being continued permanently, or for a longer period than five years."

The question presented for adjudication is one of great moment to the municipalities of the Commonwealth, and it is therefore of paramount importance that we should establish a principle which will not unduly diminish their revenue, on the one hand, by allowing corporations to escape a fair share of the public burdens, through a construction so broad and lax as to permit the transfer of established plants under the specious pretense of locating new manufactories, nor, on the other hand, drive away new capital by a rule so narrow and technical that the spirit of the law will be killed

by its letter, and the very end sought to be attained defeated. The cardinal rule for the construction of laws is the ascertainment of their reason and spirit, as against the mere letter of the enactment. Taking this as a guide, it will be profitable to recur to the history of the subject of such exemptions pending the formation of the Constitution. When it had been determined by the convention to adopt the *ad valorem* system of taxation as the uniform rule of the fiscal scheme of the Commonwealth, it was urgently brought to the attention of that body that, in the intensely competitive struggle between cities of the country to secure the location of manufacturing plants, the heavy burden of the *ad valorem* system was calculated to drive manufactories from the cities of our own State to those of States having a more favorable system. In recognition of the soundness of this apprehension, the convention adopted section 170, by which cities are enabled to offer five years' exemption from all taxation as a bonus for the location of new manufactories within their corporate limits, it being assumed that, after the exemption period has expired, they will not be likely to incur the great loss incident to removal in order to escape future taxation, and the cities will thereby secure this additional capital to tax after the expiration of the exemption period, as well as the enjoyment of the immediate fruits of additional employment for its working classes, and that general impulse of prosperity which at once flows from the presence of new capital, and enriches every department of municipal vitality. The purpose, then, of the provision of the Constitution is the attraction of new capital for manufacturing purposes. Applying this principle to the facts before us, we reach these questions: Was the Mengel Box Company a new plant, and did it locate in Louisville under the induce-

ment of the constitutional provision, and the statute and ordinance passed for the purpose of carrying it into effect? Undoubtedly, these interrogatories must be answered in the affirmative, if the evidence of C. C. Mengel, who alone testitified in the case, can be accepted as true, unless the fact that the new corporation invested a part of its capital in the old plant forbids this conclusion. The undisputed facts show that the C. C. Mengel, Jr., & Bro. Company had gone out of the box-making business before the new corporation was formed. So far as Louisville was concerned, it had lost this factory, as a business enterprise, as wholly and completely as if it had never existed there. It is true, the wheels of the machinery had not actually ceased to revolve, owing to the fact that the old corporation had certain contracts which had not expired, and which it was bound to fulfill, but the determination had been finally and definitely reached to discontinue the enterprise, and, as soon as its contracts were all carried out, to sell the property for what it would bring in money, and distribute it among the stockholders. So, then, the C. C. Mengel, Jr., & Bro. Company had gone out of the box-making business. With this state of affairs in hand, C. C. Mengel undertook to organize a new corporation, with new capital to go into the same business, and to sell to it the old property as a part of its new plant. It will not do to say that this was a mere expansion of the old business. Such an assumption does violence to the only evidence in the case bearing upon the question, and substitutes the arbitrary opinion of the judge for the sworn testimony of the witness. The C. C. Mengel, Jr., & Bro. Company did not dissolve, or merge into the new corporation. It is, on the contrary, still in existence, carrying on the original business of dealing in lumber.     What difference did it make to the city of Louisville whether the new corporation purchased the old plant, or not,

or whether a few of the incorporators of the new were members of the old? Did it any the less enjoy the benefit of the added capital? Suppose instead of buying the old plant, the new corporation had purchased the site and machinery of some third parties' planing mill; would any one contend that this was not a new venture? And yet, so far as the result to the municipality was concerned, would it not have been precisely the same? Just the same amount in value of property which had theretofore been paying taxes would thereafter, for five years, be exempted. Or, suppose the C. C. Mengel, Jr., & Bro. Company had sold out its box plant for money to a third person, and then invested the proceeds in a new plant, in connection with the foreign stockholders; would any one contend that, because the old stockholders were once members of a box factory, they could never be members of a new one? Under the contention of appellee, the old plant of appellant could, under identically the same circumstances, have been turned into any kind of a new plant, except a box factory. This view is not consonant with the reason and spirit of the law. The object was to locate new factories; to attract new capital. This was done. The old factory had ceased to exist. As a business enterprise, it was dead. It was to be quickened into new life only by the potent touch of new capital. What matter if this new life was that of a box factory or a planing mill? It furnished new work for the unemployed, new deposits for the banks, new trade for the merchants, and sent a new and richer current of capital through every artery of trade and commerce. In other words, it brought everything to Louisville which the law was designed to secure, and, having done so, it is entitled to the exemption for which it has paid the price.

The fact that the new corporation bought out the old plant is a mere coincidence, which should not be considered in the solution of the question. To do so would be but to confuse the immaterial with the material; to elevate a coincidence into a predominant factor of the problem. If the transaction had only been the enlargement of an old plant —the mere addition of capital to a going concern—the conclusion of the chancellor would have been sound, but the evidence does not disclose this state of facts. The old plant was dead. It was not to be merely enlarged by the transaction, but the property was to go as a small part of the new plant.

The question is one of fact, and every case must be determined by its own merits. No inelastic rule can be laid down, lest, on the one hand, fraud be accomplished by undue laxity, or, on the other, the usefulness of the law be minimized by a too narrow and rigid construction.

This record shows the utmost good faith on the part of the new incorporators. They consulted with the city authorities at every step in the establishment of the new venture, secured the favorable opinion of the city attorney on their title to the exemption under the existing facts, and filed the affidavit required by the ordinance with the city assessor; thus showing in advance they had purchased the old plant, and supposing, up to the time this action was instituted, that there was no cloud on their title to the exemption claimed. Their integrity is not challenged either in the evidence or in the argument; and, unless an old plant, which has ceased to be a "going concern," can never be purchased for the establishment of a new one of the same kind, without operating to deprive the investors of the exemption otherwise authorized by the law, they are clearly

entitled to exemption from taxation for five years after the establishment of their plant. There can be no danger to the municipality in a transaction such as this record discloses, and the wellwishers of appellee have substantial cause to rejoice when it can exchange the right to tax $150,000 worth of property for a period of five years for the establishment of a new plant with a capital of $1,500,000.

Judgment reversed for proceedings consistent with this opinion.