JUDGE LINDSAY
delivered the opinion op the court.
Section 2, article 7, of the charter of the city of Louisville, adopted in the year 1851, conferred upon the general council *670 the power to pass ordinances to procure the improvement, either by grading and paving, or by grading, paving, and macadamizing, or by grading and planking, any portion or the whole of any street or alley then established, or which might thereafter be established, within the city limits, at the cost of the owner or owners of the ground fronting such improvements, to be apportioned according to the number of feet front each might own; and a lien was created on said ground to secure the payment of said costs. '
Section 6 of said article further provided that when any street or alley had been once graded and paved, or graded and otherwise improved, as provided in section 2, at the cost of the owners of the ground fronting thereon, and was accepted by the general council, the part of such street so improved should thereafter be kept in repair and cleaned at the expense of the city.
Under this delegated power the general council, as is made to appear by the agreed facts in the record, procured that portion of Broadway between Jackson and Hancock Streets to be graded, paved, and macadamized at the cost of the lot-owners whose grounds fronted thereon, and the same, when completed, was accepted by said council.
Afterward, on the 3d of March, 1870, the General Assembly granted to the city of Louisville a new charter, the 12th section of which embodies this language: “ Public ways, as used in this charter, shall mean all public streets, alleys, sidewalks, roads, lanes, avenues, highways, and thoroughfares, and be under the exclusive management and control of said city, with power to improve them by original construction and reconstruction thereof as may be prescribed by ordinance. Improvements, as applied to public ways, shall mean all work and material used upon them in construction and reconstruction thereof, and shall be made and done as may be prescribed by ordinance, at the exclusive cost of the owners *671 of lots in each fourth of a square, to be equally apportioned by the general council according to the number of square feet owned by them respectively, except that corner lots (say thirty feet front and extending back as may be prescribed by ordinance) shall pay twenty-five per cent, more than others for said improvements.” Said section further provides that a lien shall exist on the lots for the costs of said improvements.
Acting under the authority delegated by this last charter, the city, by an ordinance regularly adopted, procured that portion of Broadway between Jackson and Hancock Streets to be reconstructed by tearing up and removing the material used in its original construction, and substituting therefor what is known as the “Nicolson pavement.” To pay for this improvement an assessment has been made against the lots fronting the same, as authorized by section 12 of the charter of 1870.
Against a lot owned by the appellant Bradley there has been assessed the sum of $553.68, which amount he admits to be correct and proper under the provisions of the ordinance. He also admits that the said improvement has had the effect of enhancing the value of his lot to an .amount equal to said assessment; and waiving all technical objections to the proceedings of the city and its officers touching the matter, he resists the payment of the assessment upon the sole ground that as the owner of his said lot was compelled to pay an assessment made against the same to defray the costs of grading and macadamizing the street under the provisions of the charter of 1851, and as said charter by reason thereof required the city thereafter to keep it clean and in repair, that this amounted to a covenant upon the part of the city or the state to forever exempt said lot from further taxation for the purpose of reconstructing, repairing, or cleaning the same; that said covenant runs with the land, and had passed to him; and that the charter of 1870, in so far as it attempts *672 to release the city from its undertaking or agreement to keep said street in repair, is in conflict with both the Federal and state constitutions, because, if valid and effectual, it would have the effect of impairing the obligations of contracts.
It is by no means clear that the imposition upon the city by the charter of 1851 of the duty of keeping in repair such streets as had been once improved at the cost of the property owners would apply in cases in which it might become necessary to reconstruct the same with new and different material; but we do not regard it as essential in this case to determine that question.
Unless in estimation of law there was a contract, in the constitutional sense, between the public and the owner of appellant’s lot, it is clear that his defense is not well taken; and it is to this question that the attention of the court will be directed.
The right of the state government to assess the cost of the improvement of streets on the property fronting on the same grows out of the sovereign power of taxation; and when such assessments are imposed to pay for local improvements, clearly conferring special benefits on the property taxed to the extent of the assessments, the constitutionality of the same can not now be questioned without disregarding the adjudications of almost all the American courts. In this state this question has been frequently considered, and may be now regarded as conclusively settled by the repeated adjudications of this court. (The City of Lexington v. McQuillan’s heirs, 9 Dana, 514; Hyatt v. City of Louisville, 2 B. Monroe, 177; and subsequent cases.) These cases also settle the principle that the General Assembly can constitutionally delegate this sovereign power of taxation to local municipal governments, either with or without restrictions or limitations.
By the charter of 1851, this power was only partially delegated to the local government of the city of Louisville. Under the same property owners could be compelled to pay *673 the expense incurred in the original improvement made upon the streets upon which their property fronted. This having been accomplished, the delegated power was exhausted, and the city was required henceforth to keep such streets in repair at the general expense, not because it had covenanted with the owners of the lots to do so, nor because the power of taxation in the state government was not adequate to impose additional assessments upon said property owners for the repair or reconstruction of the streets, but because the power delegated to the municipal government had, by the terms of the grant itself, ceased to exist.
Ordinarily governments, in the imposition of taxation, however many the conditions and limitations voluntarily imposed upon their exercise of this sovereign right, can not be said in any sense to be contracting with the tax-payers. “ The taxing power of a state is never presumed to be relinquished unless the intention to relinquish is declared in clear and unequivocal terms.” (Philadelphia and Wilmington Railroad Company v. Maryland, 10 Howard,. 394.) And even then the state will not be irrevocably bound unless some duty is imposed upon the tax-payer as the consideration of the grant, which the citizens of the state are not generally required to perform; or unless, by the exemption, he is induced to embark in some enterprise, or to invest his means in some adventure which, if successful, will result advantageously to the state as well as to himself. And this we conceive to be the doctrine upon which the exemptions in the way of taxation in favor of banks, railroads, and other quasi .public corporations have been upheld by the courts as coming within the legal acceptation of the term “ contract.” In the case of the State of New Jersey v. Wilson, 7 Cranch, 165, the state agreed with the Delaware Indians that, in consideration of the surrender by them of certain claims to the southern part of the state (then a colony), that other lands should be purchased for them to *674 reside upon, which should thereafter be “ exempted from taxation.” This exemption, in view of the consideration passing from the Indians to the public, was held to be a contract, which the state could not impair by subsequent-legislation.
Sedgwick, in his work on Statutory and Constitutional Law, extracts from the case of Butler et at. v. Penn, 10 Howard, 418, the doctrine that the contracts designed to be protected by the Federal constitution are “ contracts by which perfect rights — certain definite, fixed, private rights of property — are vested,” as distinguished from rights growing out of measures or engagements adopted or undertaken by the body politic or state government for the benefit of all, and which, from .the necessity of the case and according to universal understanding, are to be varied or discontinued as the public good may require.”
Prior to the adoption of the charter of 1851 the city government of Louisville had the authority under existing laws to procure the improvement of streets and to keep them in repair at the expense of persons owning ground fronting on the streets so improved and repaired. Under said charter the lot-owners on Broadway between Jackson and Hancock Streets were required to perform no duty nor to pay any tax which the state government could not have unconditionally exacted. Hence in paying the assessments made against them for the original improvement of said street they sacrificed no legal right, nor made any extraordinary or unusual contribution out of their private wealth to the public. They did nothing which by any possible construction can be deemed a consideration sufficient to bind the state to exempt their said property from similar taxation throughout all time to come. The exemption in their favor grew out of the limitation upon the delegated power of the city government — a limitation voluntarily imposed thereon by the General Assembly, and which that department of the state government had the right to *675 remove at any time public policy might seem to demand its removal.
No contract was made nor intended to be made between the citizen and the sovereign. The temporary exemption of the citizen’s property from a given character of taxation was a mere act of grace, which bound the state only so long as the statute under which it was claimed remained upon the statute-books unrepealed. A different construction of the charter of 1851 would have the effect of conferring upon those property-holders who, under its provisions, improved the streets upon which their grounds front, privileges which no other class of the citizens of Louisville enjoy.
The property taxed for the improvement of streets before the adoption of the charter of 1851, and that taxed for the same purpose since its repeal by the adoption of the charter of 1870, can undoubtedly still be taxed for the purpose of reconstructing or keeping said streets in repair, and, according to the theory of the appellant, can also be compelled to contribute to the reconstruction and repairing of the street upon which his property fronts. This inequality of taxation, necessarily following the construction insisted upon, is a strong if not a convincing argument against its correctness, or that it is the exemption, and not the law repealing it, which is in violation of the constitutional limitations upon the power of taxation.
For these and other reasons we deem it unnecessary to discuss, we concur with the chancellor in the conclusion reached by him upon the state of facts as agreed by the parties and presented by the record.
Wherefore his judgment is affirmed.