JUDGE PRYOR
delivered the opinion op the court.
The Louisville & Frankfort Railroad Company was incorporated by legislative enactment on the 1st of March, 1847, and required by the provisions of the fifty-seventh section of the act to pay into the state treasury an annual tax of twenty-five cents on each share of fifty dollars of stock owned and held by the stockholders of the company. By an act of the 29th of February, 1848, the charter was so amended'as to fix the rate of tax on each one hundred dollars of its stock as by law “is collectible on each one hundred dollars of taxable property for the public revenue.”
The Frankfort & Lexington Railroad Company was incorporated on the 28th of February, 1848, the state by the terms of the charter reserving the right to demand of the company the same rate of tax on each one hundred dollars of its stock “as is by law collectible for state purposes.” By an act of February 16, 1858, these two companies, in accordance with an agreement previously made, undertook to transact the business of each under one management, with a proviso contained in the agreement “that all the taxes of the capital stock, and all taxes and insurance on property not used in the joint undertaking, should be paid by the company owning the property.” The charters of these two companies were so amended by the act of February 2, 1866, as to authorize them to construct, equip, and operate a branch railroad from any point on the line of their roads above Lagrange to the Ohio River, or to a point at or near the cities of Covington or Newport.
*45 It is provided in this amended act “ that in the construction and operátion of any road so built said railroads shall have all the rights, powers, and privileges conferred by the charter of the Louisville & Frankfort Railroad Company and the various amendments thereto. It is further provided that the Frankfort & Lexington Railroad Company may increase its capital stock three hundred thousand dollars, and the Frankfort & Louisville Railroad Company seven hundred thousand dollars.”
The branch road, known as the Short-line Road, was constructed by the two companies, and after its completion an act of the legislature was passed on the 8th of February, 1870, consolidating the two companies into a single corporation, called the Louisville, Cincinnati & Lexington Railroad Company. This enactment, with a view doubtless of regulating and determining the rights of the two companies with reference to their interests in the new corporation, fixed the capital stock of the Louisville & Frankfort Railroad Company at twenty-two thousand one hundred and ninety-two shares, of fifty dollars each, and that of the Frankfort & Lexington Railroad Company at five thousand one hundred and forty-seven shares, of one hundred dollars each. The shares of the new company were fixed at fifty dollars, and this latter corporation was invested with and succeeded to “ all the rights, privileges, and powers of the preceding companies out of which it had been created.”
By the act of February 20, 1864, “all railroads in this commonwealth (other than street-railroads), including depot-grounds and other improvements, etc., are valued at twenty thousand dollars per mile, and are taxed upon that valuation at the same rate of tax as is levied by law on real estate.” It is also provided by the eighth section of this act “ that all laws or parts of laws in conflict or incompatible with the provisions of this act are hereby repealed, and no other taxes than those imposed, whether provided for in the charters or otherwise, *46 shall be collected from the several corporations herein enumerated by this commonwealth.” (Myers’s Supplement, 480.)
This action is brought by the commonwealth to recover of the appellant (the Louisville, Cincinnati & Lexington Railroad Company) the taxes alleged to be due and unpaid on its branch road from Lagrange to the city of Newport for the years 1869, 1870, and 1871, amounting to nineteen thousand t'fro hundred dollars, with interest, etc., estimating the value of the road at twenty thousand dollars per mile, and fixing the rate of tax as is levied by law on real estate in accordance with the provisions of the act of February, 1864, already referred to. The company maintains that as this branch road belonged to the two original companies, and was constructed under their charters, the payment of taxes on the shares of stock belonging to these companies or on the shares of stock belonging to the new company is in full discharge of all the revenue due the state on account of this branch road.
The court below adjudged the appellant liable, and from that judgment this appeal is prosecuted.
The capital stock of the original companies or that of appellant was never increased, as authorized by the act of the 2d of February, 1866. It is true that the act of the 8th of February, 1870, consolidating these original companies into the Louisville, Cincinnati & Lexington Railroad Company, shows an increase of the capital stock of the Louisville & Frankfort Railroad Company of $109,400, and that of the Lexington & Frankfort Company of $64,700; but when this stock was increased or why does not appear in this record, nor is it' material to the proper determination of the questions involved in this case.
These old companies, prior to the act of February, 1870, paid no additional tax to the state by reason of the construction of this branch road, nor has any been paid since, or if so, it is only on the increased stock, amounting in the aggregate in *47 both companies to $174,100. This branch road is eighty miles in length, and must have cost greatly more than this small increase of capital stock.
There is no reason why the appellant should not be made to pay these taxes, unless there is a provision in some one of the charters from which the appellant derives its rights and privileges exempting this road from taxation. The act vesting the original companies with the power to construct branch roads neither in express terms nor by implication exempts them from taxation, nor is there any reason shown why the legislature should have permitted these original companies to build and equip such a road, without the right to impose taxes, when the property of all similar companies is taxed upon a valuation of twenty thousand dollars per mile.
Under the original acts of incorporation the state reserved the right to demand and coerce from both companies the same rate of tax on each one hundred dollars of stock -which by law was collectible on each one hundred dollars of taxable property for public revenue. There was no stock taken in the new road, and the legislature never intended to confer the privilege on these original companies of constructing branch roads, without subjecting them to taxation. It is not pretended that the stock in the old roads has been taxed to pay the revenues due on the branch road, or that any- other tax has been paid than such as the state would have been entitled to had no branch road been constructed.
Upon what principle then can this branch road be exempted from taxation ? There is no act of the legislature exempting it, and no tax has ever been paid the state. The legislature may create corporations, whereby certain liabilities and duties are assumed by the latter, and in consideration of which rights and privileges are granted that no legislation without the consent of the parties interested can impair or diminish. In such cases “ the expectation of benefit to the public is the moving *48 consideration on the one side, and that of expected remuneration for the expenditure on the other.” There is no contract, however, in this case affecting the right of taxation, and although the amended act authorizing the construction of the branch road is silent on this subject, still in both the original charters, from which all the rights and privileges of the appellant are derived, the legislature has said that the corporate property created by reason of each grant must be the subject of taxation in imposing a tax, by the provisions of the several charters.
Nor has the legislature in imposing this tax undertaken to say or contracted that no additional tax shall be imposed; but, on the contrary, by .amendments to the original charter, has not only changed the mode of its collection, but increased the rate of taxation. It is said by the court, in the case of Bradley v. McAtee (7 Bush, 667), “that the taxing power of the state is never presumed to be relinquished, unless the intention to relinquish is expressed in clear and unambiguous terms.”
In the case of the Providence Bank v. Billings (4 Peters, 514), Chief Justice Marshall delivering the opinion of the court, said, “We must look for the exemption in the language of the instrument, and if we do not find it there, it would be going very far to insert it by construction.” The mere imposition of taxes at the time a charter is granted or afterward upon the property of a corporation will not authorize this court to assume that the legislature has contracted that no additional taxation shall be imposed either upon the property owned by the corporation at the time of the grant or afterward acquired. If this principle is recognized, and the rate of taxation once asserted adjudged to be beyond legislative control, it must apply to almost every character of taxation- affecting either the citizen or corporation, and by a system of unwise legislation under it the financial condition of the state would necessarily become embarrassed and its treasury depleted. The enactment, however, of the 14th of February, 1856, and now a part of the *49 general statutes, reserves to the legislature the power to repeal or amend all charters and grants to corporations enacted or granted since the 14th of February, 1856, with the provision that no amendment or repeal shall impair other rights previously vested. This ■ enactment may not be applicable to the questions involved in this case, as the charters of the original companies were obtained long prior to its passage, and therefore its effect upon the rights of the corporation will not be considered.
By an act of the legislature, on the 27th of January, 1830, the Lexington & Ohio Railroad Company was chartered, and by the terms of the grant the road was to be exempt from taxation for twenty years, and was never to be taxed beyond the rate of tax imposed on real estate. It is now insisted that the rights and privileges of this road belong to the appellant. After a careful examination of the various'charters we-have been unable to find any clause in either the charter of the Louisville & Frankfort or the Frankfort & Lexington Railroad Company conferring such rights; but, on the contrary, a rate of taxation is imposed upon the corporate property of each by the express terms of both grants.
The liability of appellant for taxes upon this branch road being ascertained, the only remaining question is, shall the stock of the corporation be taxed as provided by the original charters of the companies out of which the present corporation was created, and to the rights and powers of which it has succeeded, or shall the tax be assessed in accordance with the provisions of the act of February, 1864, estimating the value of all railroads at twenty thousand dollars per mile. The eighth section of this act expressly repeals all laws in conflict with its provisions, and provides that no other taxes shall be collectible, whether provided for in the charters or otherwise. The object the legislature had in view in passing this law was to facilitate the collection of revenue from corporations, and *50 to make the taxation upon such corporate property equal and uniform throughout the state. The power of the legislature to enact such a law, and to repeal all laws in conflict with it when not impairing the rights of the corporation, can not be questioned. There is no right necessary to the existence or the discharge of the duties of this corporation affected by this enactment. Its exemption from the payment of revenue is neither necessary nor incidental to the exercise of any of its corporate powers or rights.
The taxing power is not only of vital importance, but such an essential attribute of sovereignty as that its relinquishment or restriction should never be assumed, and as said by Chief Justice Marshall, “the intent, wisdom, and justice of the representative body and its relation to its constituents furnish the only security where there is no express contract against unjust and oppressive taxation.” This rule, however, should be restricted in its application, as the imposition of taxation to such an extent as to destroy the right of property belonging to the citizen or corporation, if not imposing the obligation of a contract, would at least be in violation of that provision of the bill of rights prohibiting the taxing of private property for public use without just compensation being previously made the owner. The legislature has not attempted to exercise any such power in this ease. The rate of taxation by the act of February, 1864, is made common to all the railroads in the state, and no distinction exists unless by reason of some provision in a particular charter the state has in express terms relieved the corporation from taxation by reason of having received an adequate consideration therefor. This road should contribute to the discharge of its portion of the public burden as well as .the other railways in the state.
The court below very properly adjudged that the taxes should be imposed as provided by the act of February 20, 1864, as that mode of ascertaining the proper valuation ap *51 plies to the whole road, including the main stem as well as the branches. All these roads are now consolidated into one corporation, and the valuation of the whole road in the mode prescribed by the act of 1864 will determine the amount of taxes due, the stock not being (as the law now exists) the subject of taxation.
Judgment affirmed.