## Jones Bros., Castleman & Blakemore v. City of Louisville, et al.

(Decided March 15, 1911.)

### Appeal from Jefferson Circuit Court (Second Chancery Division).

Manufacturing Establishments—Exemption From Taxation—Merger of Three Into One—Effect.—Sec. 170 of the Kentucky Constitution provides that: "The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation for a period not exceeding five years as an inducement to their location therein." Sec. 2980a, Kentucky Statutes, provides that: "The general council shall have power by ordinance to exempt from municipal taxation for a period not exceeding five years, manufacturing establishments as an inducement to their location within the city limits." Held that where the evidence shows beyond a doubt that three manufacturing corporations in a city were merged into one corporation under a new name

and one management, said concern did not so constitute such a new manufacturing establishment within the letter or spirit of the Constitution, the Kentucky Statutes or the city ordinance of Louisville as to entitle it to exemption from municipal taxation for five years.

D. W. CASTLEMAN, PRYOR & CASTLEMAN and CHAS. H. MORRIS for appellant.

CLAYTON B. BLAKEY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The sole question presented for decision on this appeal is, whether certain property in the city of Louisville, owned by the appellant corporation and used in its business of manufacturing cider, vinegar, molasses and fruit products, is exempt under the Constitution and laws of the State and an ordinance of the city of Louisville, from taxation for municipal purposes for a period of five years.

The action was brought by appellant in the court below to establish its alleged right to such exemption for five years, and enjoin the appellees, city of Louisville and John Buechel, its assessor, from assessing for taxation the property in question. On the hearing of the case in the circuit court, it was adjudged that appellant was not entitled to the exemption claimed, hence the injunction asked was refused, and the action dismissed.

Section 170 of the Constitution, under which the exemption is claimed, provides:

"The General Assembly may authorize any incorporated city or town to exempt manufacturing establishments from municipal taxation, for a period not exceeding five years, as an inducement to their location."

In the exercise of the power conferred by section 170 of the Constitution the General Assembly enacted what is known as section 2980a, Kentucky Statutes, which provides:

"That the general council shall have power by ordinance to exempt from municipal taxation, for a period not exceeding five years, manufacturing establishments, as an inducement to their location within the city limits."

The General Council of the City of Louisville, deeming it a wise policy to further the manufacturing interests of the city by inducing the location within its limits of new enterprises of that character, in pursuance of the authority vested in it by the provisions of the Consti-

tution and statute, supra, adopted the following ordinance:

"Section 1. That in order to induce the location of more manufacturing establishments within the city limits, owned and operated by any person, firm or corporation, which shall have been, after the passage of this act authorizing this ordinance, permanently located and conducted within the limits of the city of Louisville, shall be and the same is hereby exempted for a period of five years after such location and the commencement of the business of manufacturing thereat from all taxation whatever by the city of Louisville, on all property, real or personal, tangible or intangible, owned, employed and used by such person, firm or corporation in conducting the business of such manufacturing establishment and which would otherwise be subject to city taxation; provided, however, the exemption herein specified is granted on condition that the person, firm or corporation owning and operating such manufacturing establishment shall comply with the provisions of the third section of this ordinance, and no such establishment shall be entitled to an exemption from city taxes until said section is complied with.

"Sec. 2. The provisions of section 1 hereof shall apply to such manufacturing establishments as may be brought into the city by annexation of territory provided the owners thereof do not object to annexation or shall agree before the passage of this ordinance to withdraw their objection to the annexation.

"Sec. 3. That any person, firm or corporation that shall be induced by the provisions of section one or section two of this ordinance to locate or bring a manufacturing establishment within the city limits shall, prior to the first day of September next, after said establishment shall have been located, or brought within this city and begun the business of manufacturing thereat, file with the city assessor a written statement, verified by the proprietor, or one of them, if composed of a firm, or by the chief officer or manager in charge of the corporation, as the case may be, showing the following facts, viz.: The name of the proprietor or of the members of the firm or corporation and operating the establishment; the place where the establishment is located within the city; the kind of manufacturing engaged in, and when begun at such location; that the manufacturing establishment is a

new one, or has been located or brought within the city
limits since the passage of the act authorizing this ordi-
nance; that it has been thus located, or brought within
the city in good faith, with the intention of being con-
tinued permanently, or for a longer period than five
years.

"Sec. 4. That it shall be the duty of the city assessor
to preserve and keep on file in his office all such verified
statements; and he shall omit from his assessments for
city taxation for a period of five years next after the fil-
ing of each verified statement as aforesaid, the property
of the manufacturing establishment named therein, as
set forth in sections one and two of this ordinance.

"Sec. 5. This ordinance shall take effect from and
after its passage.

It is manifest that the sole object of the constitutional
provision and statute in question is to exempt from tax-
ation, for a period of five years, new manufacturing con-
cerns, provided they invest their capital and locate their
plants within the limits of the city offering by ordinance
the inducement afforded by such exemption. Laws ex-
empting property from taxation are not so favorably re-
garded by the courts as to justify an interpretation that
would extend their meaning by mere implication. Our
attitude toward such laws is clearly expressed in the
case of the City of Middlesboro v. New South Brewing
Company, 108 Ky., 351, in the opinion in which it is said:

"It is well settled that exemptions from taxation are
regarded in derogation of common right, and therefore,
are not to be extended beyond the exact or express re-
quirements of the language used, construed strictissimi
juris." Railroad Co. v. Thomas, 132 U. S., 174.

An equally explicit statement of the same doctrine
may be found in an opinion of the Supreme Court of
Maryland in the case of Frederick Electric Light and
Power Co. v. Frederick City, 84 Maryland, 595 (63 L. R.
A., 130); in which the plaintiff was claiming exemption
from taxation under an ordinance similar to the one we
have before us. In refusing to allow the exemption the
court, in part, said:

"The right of taxation is never presumed to be re-
linquished, and before any party can rightly claim an
exemption from the common burden, it is incumbent upon
the party to show affirmatively that the exemption
claimed is authorized by law. If there be a doubt upon

the subject, that doubt must be resolved in favor of the State, and it is only where the exemption is shown to be granted in terms clear and unequivocal, that the right of exemption can be maintained."

This court has had before it but two cases in which the exemption ordinance under consideration has been construed. The cases referred to were Mengel Box Co. v. City of Louisville, 117 Ky., 735, and Continental Tob. Co. v. City of Louisville, 123 Ky., 173. In the first the exemption was allowed and in the second refused. The reasons upon which the court based its conclusion that the Mengel Box Co. was entitled to the exemption claimed are thus stated in the opinion:

"Was the Mengel Box Company a new plant or did it locate in Louisville under the inducement of a constitutional provision, and the statute and ordinance passed for the purpose of carrying it into effect? * * * The undisputed facts show that the C. C. Mengel, Jr. & Bro. Co. had gone out of the box making business before the new corporation was formed. So far as Louisville was concerned, it had lost this factory, as a business enterprise, as wholly and completely as if it had never existed there. * * * The C. C. Mengel, Jr. and Bro. Co. did not dissolve or merge into the new corporation. It is on the contrary, still in existence, carrying on the original business of dealing in lumber. * * * The object was to locate new factories, to attract new capital. This was done. The old factory had ceased to exist. As a business enterprise it was dead. If the transaction had only been the enlargement of an old plant—a mere addition of new capital to a going concern—the conclusion of the chancellor would have been sound. * * * The record shows the utmost good faith on the part of the new incorporators. They consulted with the city authorities at every step in the establishment of the new venture, secured the favorable opinion of the city attorney on their title to the exemption on the existing facts, and filed the affidavit required by the ordinance with the city assessor; thus showing in advance they had purchased the old plant, and supposing, up to the time this action was instituted, that there was no cloud on their title to the exemption claimed."

In the case of the Continental Tobacco Co. the facts were wholly different. The tobacco company, after becoming incorporated for that purpose, acquired by pur-

chase two large, profitable going tobacco manufacturing plants in the city of Louisville each of which it enlarged, by increasing its capacity, employing more hands and investing therein more capital. There was, in other words, a mere merger of the two plants, each continuing to be operated, but under the one new corporate name of the Continental Tobacco Co. Claiming on these facts that it had brought to Louisville new manufacturing establishments in the meaning of the Constitution, statute and ordinance in question, the Continental Tobaco Company demanded of the city exemption from municipal taxation for five years. The following excerpts from the opinion of the court will show the ground upon which the exemption was refused:

"The John Finzer & Bro. Co. and the American Tobacco Co. establishments were going concerns, and so far as this record shows were prosperous, and no purpose existed to discontinue the business. They were active, going manufacturing establishments, employing a large number of persons and had a vast amount of money engaged in the enterprises. There is nothing in this record showing that the parties contemplated a suspension of their business or in anywise fail to continue as active and apparently prosperous concerns. * * * In the Mengel case the court found that the box business was unprofitable, that the corporation carrying on the business intended to abandon the enterprise altogether as soon as certain contracts were fulfilled. The court adjudged that Louisville had lost the factory as a business enterprise as wholly and completely as if it had never existed there. The court found 'that the old plant was dead' * * * 'that it had ceased to be a going concern.' In view of this condition the court concluded that the new company had established a new plant, and that the claim of exemption could and should be sustained. How different are the facts in this case. We have said, the Finzer Company and the American Tobacco Company were going concerns at the time they were purchased, and at the time the Continental Company began to operate them in Louisville. No purpose seems to have ever existed to abandon these manufacturing establishments, therefore, Louisville did not get new enterprises, new manufacturing establishments, but simply another corporation which continued to operate the old ones. * * * Had the court concluded in the Men-

gel case that it was a live concern, that the owner of the establishment had no purpose to discontinue its business, and simply a new corporation had acquired the property and continued to run the business, it would not have held that it was exempt from taxation. * * *

"The object and purpose of the exemption of manufacturing establishments from the payment of taxes for a certain period was to induce the location of new establishments in the various cities of the Commonwealth, to induce persons of capital and enterprise and business capacity to invest their money so as to build up the cities of the State. The constitutional convention * * * relaxed that uniform rule (as to equality of taxation) to the extent of allowing new enterprises to be exempt from taxation, believing that the location of new manufacturing and other business establishments in the cities would ultimately contribute such sums to the payment of the expenses of government as would more than compensate the other taxpayers who bore the burden pending the establishment."

It now remains to be seen whether the facts furnished by the record in the case at bar entitle appellant to the exemption claimed.

The appellant corporation upon its organization began the business of manufacturing cider, vinegar, molasses and fruit products. It was created through the consolidation of three other corporations, viz.: Jones Bros. & Company, Torbitt & Castleman, and the LaFourche Canning Company; the first being a manufacturer of cider, vinegar and fruit products; the second, a manufacturer of syrups and molasses; and the third, a manufacturer of canned goods. Each of these corporations had enjoyed exemption from taxation under the ordinance through which appellant now claims such exemption. The present corporation is conducting business mainly in the plant formerly occupied by Jones Bros. & Co., situated at Eleventh and Magnolia streets, its business being of the same character that was conducted by each of the three other corporations before the consolidation. It appears from the evidence that appellant is, in addition, still operating the Torbitt & Castleman plant, though it has perhaps discontinued work at the LaFourche Canning Company plant. We think the evidence as a whole shows a mere combination or merger of

the business formerly conducted by the three several corporations into that controlled by appellant.

We find with the deposition of Mr. Castleman, an officer and promoter of the present corporation, a prospectus issued by a firm of brokers, with the approval of the officers of the corporation, intended to advertise and put upon the market its stock, which contains, among other statements, the following:

"The above corporation (appellant) is the result of the consolidation of the long-established and well-known manufacturing concerns of Jones Bros. & Co., manufacturers of vinegar, pickles, condiments, &c., and Torbitt & Castleman, manufacturers of molasses, syrups &c. * * * The combination of these old and successful manufacturing plants with the proposed addition of a modern establishment for the manufacture of preserves, jellies and similar products, under the personal management of Mr. Marcus Blakemore, long and favorably known to the trade in this line through his connection with the Goodwin Preserving Co., affords the opportunity for an extensive industry in these kindred lines under economical conditions rarely offered. * * * While the business of each concern conducted independently has been highly profitable and satisfactory, the advantages of the consolidation are apparent at a glance. * * * The corporation owns its own valuable property, machinery and equipment and its actual, tangible assets, without considering its valuable brands, trade marks and successful going business, are and will be worth all of the preferred stock to be issued and the demonstrated earning power, without considering the proposed economies, is amply sufficient to guarantee the payment of the dividends on the preferred stock and more."

It is true that Castleman, in explanation of this prospectus, testified that by the use of the term, consolidation of the companies, actual consolidation was not meant but merely an assembling of those products which it was proposed to manufacture at one place for the purpose of cutting down expenses. In another part of his deposition, however, in replying to the question: "You did combine the properties, didn't you?" he said: "Yes, but only temporarily until such time as we could dispose of one or the other."

The deposition of Buechel, the city assessor, shows that each of the three corporations merged in the appel-

lant corporation had, prior to the merger, enjoyed exemption from taxation as new manufacturing plants brought to Louisville.

The evidence shows beyond doubt that the appellant has not brought to Louisville a new manufacturing establishment, but that it has merely consolidated under one management and in appellants' corporate name, three other corporations, at least two of which were going concerns at the time of the consolidation. Appellant now conducts with a larger plant and greater capital the business of manufacturing all the products that were formerly manufactured by the other concerns, with the addition only of the manufacture of preserves, which cannot change its status. The facts presented bring this case clearly within the rule announced in the case of Continental Tobacco Co. v. City of Louisville, supra, and demonstrate that appellant is not entitled to the exemption claimed. Therefore, the circuit court in holding that the appellant did not conduct such a new manufacturing establishment as was within the letter, or spirit of the Constitution, the Kentucky Statutes, or the ordinance of the city of Louisville, did not err.

Wherefore, the judgment is affirmed.