## Illinois Central Railroad Company v. Commonwealth.

(Decided June 12, 1913.)

### Appeal from Lyon Circuit Court.

1. Railroads—Act Requiring Trains to Stop at Stations Where a Penitentiary is Located—When Such Act Invalid.—An act of the Legislature requiring all trains to stop at a station where there is a penitentiary of the State, is invalid as to interstate trains, when reasonable facilities are furnished at such station by other trains.

2. Railroads—Act Regulating Service of.—An act requiring railroad companies to continue such service as they were then rendering at other points in the same county, regardless of the necessity for such service is invalid.

JOHN C. GATES, TRABUE, DOOLIN & COX, BLEWETT LEE and C. L. SIVLEY for appellant.

JAMES GARNETT, Attorney General, OVERTON S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

An act approved March 19, 1912, provides as follows:

"That hereafter any corporation, company or individual operating a railroad in the State of Kentucky, shall cause to stop all trains carrying passengers over such road at every point or station on said road where there is located, or may be hereafter located, any State Penitentiary. And all such corporations, companies or individuals shall immediately after this law goes into effect, publish its schedule, setting out for the benefit of the public all changes required by the operation of this act. No such corporation, company or individual shall, in carrying out the provisions of this law curtail the service it may be now rendering any other point or station within any county within which may be located such public institution of the Commonwealth, but it shall continue to render the same service in such counties as it may be now rendering.

"Any corporation, company or individual violating any of the provisions of this act, shall upon conviction, be fined not less than two hundred dollars nor more than five hundred dollars for each offense:" (Acts, 1912, p. 458.)

On July 7, 1912, T. C. Stone at Eddyville purchased a round trip ticket from Eddyville to Paducah and return. He went to Paducah and on his return to Eddyville boarded train No. 104, which is a fast interstate passenger train not scheduled to stop at Eddyville; he was required to leave at Kuttawa, a station west of Eddyville; he waited at Kuttawa ten or fifteen minutes for a local passenger train which followed train No. 104 and was taken on it from Kuttawa to Eddyville arriving there about fifteen minutes later than he would have arrived if he had been permitted to travel to his destination on train No. 104. The grand jury at its following term indicted the railroad company for failing and refusing to stop the train at Eddyville. The defendant demurred to the indictment, its demurrer was overruled. The case was then heard before a jury who found the defendant guilty and fixed its fine at $200. The railroad company appeals from the judgment entered on the verdict.

Eddyville is the county seat of the county and a branch penitentiary is located there; but for a number of years the through night trains have stopped at Kuttawa, not at Eddyville. These trains are known as No. 103 west bound, and No. 104 east bound. They arrive at Eddyville at 3:17 a. m. and 2:17 a. m. respectively. The company maintains no night office at Eddyville. The following trains stop at Eddyville:

"No 122 east bound, stopping at Eddyville at 9:03 a. m.

"No. 102 east bound, stopping at Eddyville, 12.18 p. m.

"No. 136 east bound, stopping at Eddyville, 4:43 p. m.

"No. 135 west bound, stopping at Eddyville, 7:41 a. m.

"No. 121 west bound, stopping at Eddyville, 3:05 p. m.

"No. 101 west bound, stopping at Eddyville, 5:17 p. m."

It will be observed by the act the railroad company is required to stop all its passenger trains at every point or station on the road where any State penitentiary is located, without regard to the number of other trains stopping daily at such point and notwithstanding the fact that the trains which stop at such point are sufficient for the reasonable accomodation of the traveling public. It will also be observed that by the act the company is not permitted to curtail the service it was at the time rendering any other point or station within the same county, and was required to continue to render the same service in such counties as it was then rendering without regard to the necessity for such service or the needs of the traveling public. Is such an act valid when applied to a train engaged in interstate commerce? In Cleveland, etc. R. R. Co. v. Illinois, 177 U. S., 514, the United States Supreme Court had before it a statute of the State of Illinois which required every train to stop at all county seats and the company had refused to stop at a county seat a fast train running between St. Louis and New York. The court said:

"The question broadly presented in this case is this: Whether a State statute is valid which requires every passenger train, regardless of the number of such trains passing each way daily and of the character of the traffic carried by them, to stop at every county seat through which such trains may pass by day or night, and regardless also of the fact whether another train designated especially for local traffic may stop at the same station

within a few minutes before or after the arrival of the train in question.''

The court then proceeded to show that the railroad company furnished a sufficient number of regular passenger trains to accomodate the business along the road, and held the act invalid. In Miss. R. R. Co. v. Illinois Central R. R. Co., 203 U. S., 335, the court reviewed its previous opinions on the subject and adhered to the same conclusion. In that case, it said:

''In reviewing statutes of this nature, and also orders made by a state railroad commission, it frequently becomes necessary to examine the facts upon which they rest and to determine from such examination whether there has been an unconstitutional exercise of power and an illegal interference by the State or its commission with the interstate commerce of the railroad. Whether there has or has not been such an interference is a question of law arising from the facts.''

In Atlantic Coast Line v. Wharton, 207 U. S., 328, where the facts were not unlike these here, the court said:

''Without stopping to consider whether, in view of the character of the trains to which the order before us related, it would not result that the order complained of was a direct regulation of interstate commerce, and testing the subject by the local facilities at the station at which the trains were ordered to stop, we think the railroad company in this case has furnished such reasonable accomodations to the people at Latta as it can be fairly, and properly called upon to give, and the order to stop these trains is, therefore, not a valid one.''

In Herndon v. Chicago, etc. R. R. Co., 218 U. S., 135, the court reviewing its previous decisions thus summed them up:

''The principle to be deduced from these cases is, that where a railroad company has already provided ample facilities for the adequate accomodation of the traveling public such as may be proper and reasonable at any given point, and operates interstate commerce trains, carrying passengers through the same places, at which such interstate trains do not stop, a state regulation which requires the stopping of such interstate trains, in addition to ample facilities already provided, to the detriment and hindrance of interstate traffic, is an unlawful regulation and burden upon interstate commerce.''

'As Eddyville is a place of only about one thousand people and six trains stop there every day, three east bound and three west bound, it cannot be said that the railroad company is failing to furnish reasonable facilities for the traveling public without also stopping two fast night trains at that point. Any one wishing to take these trains can take them at Kuttawa which is only about a mile away, and under the rulings of the Supreme Court it must be held as a matter of law that the act requiring the two fast night trains to stop there is invalid.

In addition to this the provision of the act requiring the railroad company to continue to render the same service in county as it was rendering at other stations before the act took effect, is clearly invalid. The purpose of this provision is not difficult to see. The act was designed to require all trains to stop at Eddyville, and it was desired to continue the stop at Kuttawa; for no other reason can be assigned for limiting the scope of the act to stations in the same county. The legislature may require railroads to furnish reasonble facilities but it cannot require it for all time to continue stopping all its trains at a station although the necessity for such a stop has long since passed away. When the invalid part of a statute may be separated from the valid part so much as is valid may be sustained; but when the part that is invalid is of the substance of the act, and it may be presumed that the legislature would not have passed the act at all but for the invalid part, the whole act is invalid. Here the continuance of the stops then being made is of the essence of the act; for without this the railroad company could simply have changed its stop from one station to the other. But the purpose of the act was to require it to stop at both stations.

We therefore conclude that the act is invalid and that the circuit court under the evidence should have instructed the jury peremptorily to find for the defendant.

Judgment reversed and cause remanded for further proceedings consistent herewith.