## Martin et al. v. High Splint Coal Co. et al.
(Decided March 26, 1937.)

12

B. M. VINCENT, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellants.

EDWARD C. O'REAR, TYE, SILER, GILLIS & SILER, E. L. McDONALD, P. T. WHEELER, R. MILLER HOLLAND and J. W. FARMER for appellees.

BLAKEY HELM amicus curiae.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellees are three corporations and one individual. The business of some of them is that of mining coal from land in which such deposits are found; and some of them are engaged in extracting oil and gas where such deposits are found. Each of the plaintiffs owns in fee the mineral which they remove, or the entire land in which it is found and in some instances the right to prosecute such business is conferred by leases owned by them, whereby they acquired the privilege to make such explorations. They filed this declaratory judgment action in the Franklin circuit court against the appellants as members of the Kentucky Tax

Commission, whereby they sought to annul and be relieved from the requirements contained in the last sentence of section 3, chapter 98, being the ad valorem revenue statute enacted by the Legislature at its 1936 session and which is now contained in sections 4019-1, to and including section 4019-4 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes. That sentence so attacked in plaintiffs' petition says: "The state tax commission shall have exclusive power in the assessment of all minerals." Plaintiffs in their petition attacked the validity of the inserted requirement upon a number of grounds, but the chief ones argued, and the only ones that we conclude approach merit, are (1) that the entire act (chapter 98 supra) in which the attacked requirement is contained is void; but, if mistaken in that, then (2) that if the chapter is not entirely void, then the provision sought to be eliminated by plaintiffs is itself void for many reasons, one of which is that it is incompetent for the Legislature to require assessment of property for *local* taxation to be made solely by a state agency. The trial court sustained ground 1 of plaintiffs' contention, and if that holding is correct, it will be unnecessary to discuss or determine ground (2), or any of the other grounds which we have disregarded as untenable—one of which was and is that the act violated the provisions of section 51 of our Constitution, but which, we repeat, we do not find to be well taken. We have given to this case our usual careful attention and we are driven to what we are convinced is the inescapable conclusion that the trial court was correct in holding that the entire chapter 98, supra, is void and the opinion will be confined to a discussion of that question alone.

In disposing of it, it is of vital importance to first ascertain the exact question for determination in the light of our constitutional provisions affecting the questions dealt with in the act referred to. In stating and making plain what the *exact* question is, it will be helpful, as we conclude to first state what it *is not*. Pursuing that course, it will be seen that the question is *not* whether it is competent for a Legislature to either classify or exempt property from taxation *where* there are *no* constitutional provisions prohibiting either classification or exemption. Where there are no such inhibiting provisions found in the Constitution of the tax-

ing jurisdiction, courts are universal in their conclusion that both classification and exemption may be adopted by the Legislature without infringing upon the rights of any of the taxed citizens who may own property upon which the enacted tax is directed to be levied. Neither is this a case where only *classification* of property is permissible under the Constitution and which contains *no* inhibition against exemption from taxation. In such case, courts are somewhat divergent in their opinions as to whether the conferred right of classification also authorizes exemption from taxation within the discretion of the Legislature enacting the revenue statute. Lastly, this *is not* a case where the language of the Constitution is ambiguous, or of such doubtful phraseology as to create room for divergent interpretations, in which case the one adopted and pursued by the Legislature ordinarily will be accepted as the correct one. Counsel in their commendable zeal in support of their cause cite some cases fitting only some one or more of the situations that we have enumerated; but as will be later seen, they can have no application to this case because of provisions in our fundamental law eliminating such situations as factors in the determination of the true questions before us.

The foundation for the trial court's conclusion was and is that although our Constitution, when first promulgated in 1891, absolutely prohibited *classification* of property for ad valorem taxation, the amendment to section 171 of that instrument adopted in 1915 prescribed for classification of property for taxation for both state and local purposes; but, that section 170 of that document (which section was not expressly referred to in the 1915 amendment to section 171) not only enumerated and expressly prescribed what property should be exempted from taxation, but that it also expressly said, "All laws exempting or commuting property from taxation other than the property [exempted] above mentioned shall be void." Having reached that conclusion, the learned trial judge easily came to the further one that the attempted exemption of real estate from all state taxation by chapter 98, supra, was in direct conflict with the express provisions of section 170 of our Constitution, and that when such attempted exemption is eliminated therefrom, it became and was patent that the Legislature would have enacted no part of that act without the invalid exemption was retained

in it. Therefore, under the well-known prevailing rule in such instances, the court declared the entire act invalid, and which had the effect to restore the ad valorem levies made in chapter 148, page 665, Acts of 1934, and which became section 4019 in Baldwin's 1934 Service Supplement to Carroll's Kentucky Statutes. Although chapter 98, supra, attempted to expressly repeal the 1934 chapter (148), the latter was almost literally re-enacted by section 2 of the 1936 act, but with the exception of the insertion of the phrase, "except real estate." The levy made in both chapters 148 of the 1934 act, and 98 of the 1936 act for state revenue was at the rate "of fifty cents (50c) upon each one hundred dollars ($100.00) of the value of all property which *is directed by law* to be assessed for taxation," and both of them classified deposits in banks and trust companies, and building and loan associations, and placed a different rate on them, and it is the right to exempt real estate that furnishes the storm center of this litigation.

Section 170 of our Constitution, as we have already indicated, makes certain specific exemptions from taxation. It starts out by saying "There shall be exempt from taxation," etc., then follows an enumerated list of property which shall be exempted from taxation, and at the close of that list the language hereinbefore inserted, "and all laws exempting or commuting property from taxation other than the property above mentioned shall be void," is employed. Section 171, prior to the adoption of the 1915 amendment thereto, was in one paragraph, expressed in these words: "The General Assembly shall provide by law an annual tax, which, with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected for public purposes only. They shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general laws."

The 1915 amendment reframed that paragraph so as to read:

"The general assembly shall provide by law an annual tax, which with other resources, shall be sufficient to defray the estimated expenses of the Commonwealth for each fiscal year. Taxes shall be levied and collected

for public purposes only and shall be uniform upon all property of the same class subject to taxation within the territorial limits of the authority levying the tax; and all taxes shall be levied and collected by general law.''

Some changes in phraseology and arrangement were made, but the fundamental one was the insertion of the words ''of the same class'' in the last sentence of the old section as it appeared before the amendment. Before that amendment, the section provided that taxes ''shall be uniform upon all property subject to taxation,'' etc., but in remodeling it through the adoption of the 1915 amendment, it was made to read, ''Taxes shall be levied and collected, * * * and shall be uniform upon all property *of the same class* subject to taxation,'' etc. (Our italics.) In addition to making that change in the first paragraph of the amendment to the old section, there was added to it by the amendment two other new paragraphs—one relating to *local* taxation, and the other one prescribing for an approval by the entire people of the state of described statutes enacted under the amended section; provided the steps therein spcified were followed in order to procure the referendum election. But, we are not interested in the referendum election feature of the section, since no steps were taken within the prescribed time to procure any such election with reference to the involved chapter 98 of the 1936 acts. The first *newly* adopted paragraph of the 1915 amendment relating to *local* taxation says: ''The general assembly shall have power to divide property into classes and to determine what class or classes of property shall be subject to *local taxation*.'' (Our italics.)

The learned trial judge who rendered the judgment appealed from was of the opinion, and which we approve, that the phrase, ''of the same class'' (which as we have seen in the 1915 amendment inserted in the first paragraph of section 171) authorized a ''classification'' of property for ad valorem taxation for state revenue. That interpretation is not only in complete accord with all text-writers upon the subject, as well as opinions of courts of last resort, but it seems to be admitted by learned counsel for plaintiffs. Counsel for defendants boldly assert that proposition and opposing counsel do not seriously combat it, and do not

attempt to cite any case or any text authority in opposition thereto. We will, therefore, not lengthen this opinion by an unbroken line of available authorities substantiating that conclusion, but will henceforward pursue the discussion upon the theory that the 1915 amendment to section 171 authorized the Legislature to classify property for taxation for both state and local purposes; but that *uniformity* of rate upon the same classification that the Legislature was thus authorized to make should continue to be observed. However, it by no means follows therefrom that the right to *exempt* any class of property from taxation was given to the Legislature by the 1915 amendment; since the mere right to *classify* for purposes of taxation does not embody or include the right to exempt from taxation when there are constitutional provisions against such exemption.

To begin with, it is the universal rule that exemptions from taxation are not favored and will never be implied, except by the most imperative language. That rule, as stated, in Volume 12 of the second edition of American and English Ency. of Law, page 285, is:

"Taxation of all property being the rule and exemptions the exception, exemptions will never be presumed or implied in reference to property which would be subject to taxation without some express grant of immunity."

Cases from almost every state in the union, including many from the Supreme Court of the United States, are inserted in notes 4 and 5 to that text, including those of Kentucky Central Railroad Company v. Commonwealth, 87 Ky. 661, 10 S. W. 269, 10 Ky. Law Rep. 706; Louisville, etc., Ry. Co. v. Commonwealth, 10 Bush, 43, 44; Commonwealth v. Masonic Temple Co., 87 Ky. 349, 8 S. W. 699, 10 Ky. Law Rep. 325. The text in 61 C. J. p. 391, sec. 395, in expressing the same principle says:

"A grant of exemption from taxation is never presumed; on the contrary, in all cases of doubt as to the legislative intention, or as to the inclusion of particular property within the terms of the statute, the presumption is in favor of the taxing power, and the burden is on the claimant to establish clearly his right to

exemption, bringing himself clearly within the terms of such conditions as the statute may impose.''

Again, on page 392, sec. 396, the text says:

''Unlike the rule of liberal construction which has been generally adopted with reference to exemptions from levy and sale for the payment of debts, an alleged constitutional or statutory grant of exemption from taxation will be strictly construed, nor can such rule of strict construction be nullified by the other rule requiring a liberal construction of a statute with a view of promoting its object. Such a privilege or immunity, cannot be made out by inference or implication, but must be conferred in terms too clear and plain to be mistaken, and in fact admitting of no reasonable doubt, and where it exists it should be carefully scrutinized and not permitted to extend either in scope or duration beyond what the terms of the concession clearly require or allow, or so as to create an absolute and irrevocable exemption unless the language of the statute clearly so requires.'' Included in the lengthy list of cases cited in support of that text are City of Lexington v. Lexington Leader Company, 193 Ky. 107, 235 S. W. 31, and Jones Brothers, Castleman & Blakemore v. City of Louisville, 142 Ky. 759, 135 S. W. 301. Mr. Cooley in his celebrated work on Taxation (4th Ed.) vol. 2, p. 1404, sec. 672, approves the rule and states it in this language: ''Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt.''

Almost four pages are filled with citations in support of that text, including the domestic cases of Deposit Bank of Owensboro v. Daviess County, 102 Ky. 174, 39 S. W. 1030, 19 Ky. Law Rep. 248, 44 L. R. A. 825; Louisville & P. Canal Co. v. Com., 7 B. Mon. 160; Bradley v. McAtee, 7 Bush, 667, 3 Am. Rep. 309. To the same effect is the text on page 352, sec. 266, of 26 R. C. L. And the same is true with reference to the text in 37 Cyc. 891, and we have been unable to find any recognized authority, either in the form of a text or an opinion holding to the contrary.

The only authority for the claimed exemption con-

tained in chapter 98, supra, as urged by learned counsel for defendants, is what he terms a necessarily implied one, arising from the "classifying" modification made in section 171 by the 1915 amendment thereto; but that modification, so far as ad valorem taxation for *state* revenue is concerned, is confined exclusisvely to "classification" of property for the raising of *such* revenue. It contains no language indicating an intention to authorize *exemptions* of property otherwise taxable under the Constitution. Mr. Cooley in his great work on "Taxation," as well as all of the other text-writers above referred to, clearly point out the broad distinction between a mere power to *classify* for taxation and a power to totally *exempt* property therefrom. In section 273, page 580, volume 1, of his work referred to, he says:

"In most states, the provision as to equality and uniformity is held to preclude the legislature from either expressly exempting part of the property from taxation, or accomplishing the same result by failure to tax such property, except in so far as exemptions are especially provided for by the constitution, and in such a case, the power to exempt cannot be delegated to a municipality."

The other publications hereinbefore cited are equally emphatic in denying the power to *exempt* as arising solely from the power to *classify* when there are other provisions in the Constitution of the jurisdiction levying the tax expressly denying the right of exemption to the particular property involved.

Notwithstanding the condition of the law as so universally proclaimed, it is vigorously insisted and laboriously argued by learned counsel for defendants that the authorized classification for state taxing purposes as made by the 1915 amendment to section 171 carries with it a necessarily implied authority to *exempt* property from such state taxation; but we find ourselves unable to agree with counsel, and which conclusion is amply supported, even if the 1915 amendment to section 171 did not in its entirety embody a most conclusive presumption that it was not the intention of the amendment to authorize exemptions from taxation for state revenue purposes, but only for *local* purposes. The newly added matter to section 171 by that amend-

ment, in referring to *local* taxation, says: "The general assembly shall have power to divide property into classes and to determine what class or classes of property shall be *subject to local taxation.*" (Italics ours.) The italicized language was undoubtedly an expressed authorization to *exempt* property from *local* taxation; but it will be perceived that the authorization was confined solely to such taxes, and which condition thoroughly establishes and, under recognized rules of interpretation, justifies the conclusion, inference, and implication that it was not the intention of the Legislature in submitting the amendment, nor of the people who approved it, to provide for *exemptions* of any property theretofore subject to state taxation, but only to prescribe for a *classification* of property for both state and local taxation.

There have been but few instances with us where the question of the right of the Legislature to *exempt* from taxation property that would otherwise be taxable but for the existence of the statute, since every one appears to have conceded that no such right existed prior to the adoption of the 1915 amendment to section 171. Hence we held in the case of Raydure v. Board of Supervisors, 183 Ky. 84, 209 S. W. 19, that an excise tax could not be substituted for an ad valorem tax whereby property otherwise so taxable was made exempt from such (ad valorem) tax because such an effort invaded the section of our Constitution referred to (sec. 170 supra), and the holding therein was made, notwithstanding the question arose after the adoption of the 1935 amendment—it being presented upon an attack on an act passed in 1917. Prior to the adoption of the 1915 amendment, the same question was again before this court in the case of Campbell County v. Newport & Cincinnati Bridge Co., 112 Ky. 659, 66 S. W. 526, 23 Ky. Law Rep. 2056, and the same conclusion was reached, i. e., that section 170 of the Constitution prescribed the only property that could be made *exempt* from taxation for state purposes, and also for local purposes prior to the adoption of the 1915 amendment of section 171. So that, we not only have the law denying the right of exemption so universally declared by standard text-writers (as arising upon the conditions that existed when chapter 98, supra, of the 1936 session of the Legislature was enacted), but we also have the language of the 1915 amendment in its entirety clearly indicating no inten-

tion or purpose to confer authority upon the Legislature to exempt real estate from state taxation, as well as some former opinions of this court to the same effect—one of which, at least, was rendered since the adoption of that amendment. Counsel for defendants cite a number of cases to sustain his position, the latest of which appears to be that of Jones v. Citizens' Bank of Hartford, 228 Ky. 699, 15 S. W. (2d) 468, 470, in which this language was employed:

"Prior to the amendment to section 171 of the Constitution, the General Assembly was without power to classify or exempt property from a state or local tax levy. But the amendment adopted in 1915 expressly empowered the legislative department of the government 'to divide property into classes and to determine what class or classes of property shall be subject to *local taxation.*'" (Our italics.)

That case involved only a question of *local* taxation and the word "exempted" as found in the excerpt necessarily had reference to only such taxation, since it was only that character of taxation that was involved. But, even if the opinion had impliedly construed the right of exemption as applying to *state* revenue, it would be dictum. The other cases relied on can as easily be distinguished and shown not to apply to the narrowed question here presented, and that they in no wise support the proposition that the 1915 amendment, either expressly or by unerring implication, authorized the exemption of any property from state taxation which was theretofore subject to it.

Much argument is advanced in support of the conclusion drawn by counsel from his assumed premises that classification of property necessarily results in a partial or pro tanto exemption, and from which he argues it would necessarily follow that if the power exists to pro tanto or partially exempt property from taxation it would carry with it full authority to totally exempt the same property from taxation. That argument, however, is fully answered in the authorities to which we have referred, as well as by a clear demarcation, glaringly revealed through the application of logical principles to the situation.

It is also insisted by counsel for defendants that the effect of the amendment to a particular section of

the Constitution is analogous to the effect of a codicil to a will, i. e., that it affects all parts of the entire instrument inconsistent with the amendment. That proposition is undoubtedly true; but it is the application of it that counsel seeks to make in this case that we are unable to accept. We have already pointed out the distinction between "classification" and "exemption," and we have also shown that the 1915 amendment only authorized *classification* for state taxation and did not authorize *exemption* therefrom. The relied on analogy of the rule applicable to wills and codicils necessarily assumes the existence of the very question involved and which is that the 1915 amendment expressly or by the requisite and necessary implication authorized exemption from taxation for state purposes. We have endeavored to point out that such result does not follow, and that counsel is far afield in relying upon his assumed analogy. If it had been intended to exempt real estate, or any other property theretofore subject to taxation, the section of the Constitution that should have been amended is section 170 and not 171 which requires *uniformity* of taxation, while section 170 prescribes for "universality" of taxation.

Since the adoption of the 1915 amendment, our Legislature on numerous occasions has construed it to authorize classification of property for taxation, and classifications for state revenue have been made since then, thus furnishing a contemporaneous construction of the 1915 amendment, in accord with the above expressed views. Furthermore, our Legislature in 1932 submitted an amendment for the ratification of the people, empowering the Legislature "to provide by law that real estate and or tangible personal property may be exempted from taxation for state purposes" (see Acts 1932, c. 141); but it was voted down by an overwhelming majority at the election submitting it for ratification or rejection. No stronger evidence could be furnished that our Legislature, as well as all of us who compose the people of the state, construed the amended section 171 of the Constitution as *not* authorizing the exemption of any taxable class of property for state revenue purposes. The conclusion, therefore, is inescapable that the exemption of real estate from taxation, as incorporated in chapter 98, Acts of 1936, was and is unauthorized and that the trial court in so

concluding was correct. It therefore becomes unnecessary, as we have hereinbefore indicated, to discuss or determine any of the questions argued in ground 2, or any others relied on by plaintiffs, since the determination of ground 1, in the manner reached, is effectual to the granting of all the relief prayed for in the petition.

The last and remaining question is, What effect does our holding have upon the raising of revenue for state purposes through ad valorem tax assessments and collections? It might be argued that the involved chapter 98 of the 1936 session should be held valid in all of its parts except the exempting of real estate, but if that course should be adopted, then the first section of the chapter (expressly declaring that real estate should be exempted from taxation for state purposes, and section 4 of the act expressly repealing chapter 148 of the 1934 acts) would, if permitted to stand, either exempt real estate from taxation for state purposes, or place a rate on it of 50 cents for each $100 valuation thereof, which latter result might follow from taking out of section 2 of that chapter the words "except real estate."

Clearly the Legislature never contemplated such latter result if, and provided the exemption of real estate should be held invalid. The universal rule as declared in section 297 of Volume 1 of Lewis' Sutherland Statutory Construction is:

"* * * That one part of a statute cannot be declared void and leave any other part in force, unless the statute is so composite, consisting of such separable parts, that, when the void part is eliminated, another living, tangible part remains, capable by its own terms of being carried into effect, consistently with the intent of the legislature which enacted it in connection with the void part."

That principle as so stated has been consistently followed by us in the various cases listed under the subject of "Statutes," Key number 64 and 64(8) volume 17 of West Kentucky Digest. More recent ones are: Illinois Cent. Ry. Co. v. Commonwealth, 154 Ky. 332, 157 S. W. 687; Neutzel v. Williams, 191 Ky. 351, 230 S. W. 942; Kirchdorfer v. Tincher, 204 Ky. 366, 264 S. W. 766, 40 A. L. R. 801; Gibson v. Commonwealth, 209 Ky.

101, 272 S. W. 43; Felts v. Linton, County Judge, 217 Ky. 305, 289 S. W. 312, and Grant v. Leavell, 259 Ky. 267, 82 S. W. (2d) 283.

As we have seen, practically the entire purpose of the enactment of the involved chapter 98 of the 1936 acts was to exempt real estate from all ad valorem taxes for state purposes. Under the governing rule, as so universally declared, it cannot be said with any degree of accuracy that the Legislature would have enacted any part of that chapter with the exemption of real estate eliminated therefrom. The eliminated part, being unconstitutional and void, as we have found, it follows that the entire chapter must be held invalid, and especially so in the absence of a saving separable clause. For the same reason, the same conclusion must follow any contention that the repealing section of that act, of chapter 148 of the 1934 act, should prevail for if such effect should be given to such repealing clause or section, the commonwealth would then be left without any ad valorem taxes for state purposes. Besides, no such result is countenanced by the declared law, as will be seen by sections 244 and 245 in the work of Mr. Sutherland, supra, in which the text in the latter section (245) says:

"But where the repeal is intended to clear the way for the operation of the act containing the repealing clause, thereby showing an intention to displace the old law with the new, if the latter is unconstitutional the repealing clause would be dependent and inoperative. Where the indirect purpose of the repeal is to displace the old law and substitute the new in its stead, the repealing section or clause, being dependent upon that purpose or substitution, necessarily fails when falls the main purpose of the act.' An unconstitutional statute can have no effect to repeal former laws or parts of laws by implication, since, being void, it is not inconsistent with such former laws."

To the same effect on both of the two latter points (i. e., that of partial invalidity, and of the independent repealing clauses) is the text in 59 C. J. secs. 205 and 206, page 642.

The inescapable conclusion is that chapter 148 of the 1934 statute levying a tax of 5 cents on each $100 valuation of real estate for state purposes, together

with the other ad valorem taxes therein levied, is still in force and effect and was not repealed by the invalid chapter 98 of the 1936 acts. Some of the statements of the learned trial judge contained in the reasons given by him for his ultimate conclusions might not be approvable by us, but, since the rule is to affirm a judgment when correct regardless of the reasons given by the trial court, we conclude that the judgment appealed from should not be disturbed, and it is affirmed, solely on the grounds herein set forth.

Whole Court sitting.