## Board of Council of City of Danville v. Raum.

(Decided December 13, 1910.)

Appeal from Boyle Circuit Court.

Local Option Laws—In Force at the Time of the Adoption of the Constitution—Continue in Force.—By a special act approved January 24th, 1890, the General Assembly submitted to the people of Boyle county the question of prohibiting the sale of intoxicants in the county and provided that if the vote was against the sale it should remain in full force until set aside by a majority of the votes of the county at another election, as provided in the act. The election was held, and the act was put in force. After this the new Constitution was adopted, and the present local option law was enacted pursuant to it. Section 27 of section 3490, Ky. St., regulating cities of the fourth class, among other things, provides: "The council shall have power by ordinance to license or permit, regulate or restrain, the sale of all kinds of liquors within the limits of the city." Appellee was arrested for selling on December 7, 1909, a pint of whiskey in Danville, Boyle county, Ky., and tried and convicted in the police court and fined one hundred dollars and forty days at hard labor. On appeal, the circuit court held that the local option law was not in force in Danville. Whether the local option law is in force in Danville is the only question to be determined. Held, the act governing cities of the fourth class is a general law of the State. The act of 1890, section 27 of section 3490, Kentucky Statutes, was a special act applicable only to Boyle county. The general rule is that a general law does not repeal a previous special act, but that the two will be read together. This rule was applicable under the present Constitution in the case of Louisville v. Louisville Water Co., 105 Ky. 754, where it was held that the charter of the Louisville Water Co. was not affected by the act for the government of a city of the first class. It was also upheld in Murphy v. City of Louisville, 114 Ky. 764, where it was held that a general act regulating revenue and taxation did not re-repeal an act exempting cities of the first and second class from the operation of the previous act, and we are constrained to hold that local option acts prohibiting the sale of intoxicants were not repealed by the general laws for the government of the cities of the State pursuant to the Constitution, but that on the contrary, the clear intent of the Constitution, as well as the clearly expressed will of the Legislature, was that the local prohibitory laws should remain in force until voted out by the people themselves. We therefore conclude that the local option law is in force in Danville, and that section 3490, Ky. St., had no effect upon a local option act in cities where it was in force. This is ordered to be certified to the circuit court as the law of the case.

EMMETT PURYEAR for appellant.

JOHN W. RAWLINGS and EDWARD MORROW for appellee.

OPINION OF THE COURT BY JUDGE HOBSON—Certifying the law.

On the 7th day of December, 1909, appellee sold without license, a pint of whisky to one Simmons in Danville, Boyle county, Kentucky. He was arrested for making this illegal sale and tried in the police court, convicted, and his punishment fixed at $100 fine and forty days in the workhouse at hard labor. Appellee appealed from this judgment to the circuit court, and upon the trial there, the court held that the local option law is not in force in Danville, and that the defendant could be convicted only under section 1304, Ky. Stats., for selling whisky without license. The Commonwealth appeals.

Whether the local option law is in force in Danville is the only question to be determined. By a special act approved January 24, 1890, the General Assembly submitted to the people of Boyle county the question of prohibiting the sale of intoxicants in the county and provided that if the vote was against the sale, it should remain in full force until set aside by a majority of the voters of the county at another election as provided in the act. The election was held and the act was put in force. After this the new Constitution was adopted and the present local option statute was enacted pursuant to it. In Burdette v. Board of Council of the City of Danville, 125 S. W., 275, the defendant had been convicted under the local option law, and it was insisted that the conviction was not warranted. In answer to this contention and affirming the judgment we said:

"A special act of the General Assembly passed in the year 1890 (Acts 1889-90, c. 50) prohibiting the sale of spirituous, vinous and malt liquors in Boyle county, prescribed a penalty of not less than $100 nor more than $200, and conferred jurisdiction on the circuit court and county court. It is insisted that this act is still in force, and that the Danville police court is without jurisdiction. We have repeatedly had this question before us, and we have uniformly held that these local statutes were not repealed by the local option act; but that with respect to the quantity that may be sold and the penalties for the violation of the act, the courts are governed entirely by the local option law, and not by the local or special acts. We have also uniformly held that so far as these local acts conferred jurisdiction upon local courts different from that conferred by the present Constitu-

tion, or by the statutes enacted since its adoption, they have been repealed."

Subsection 27 of section 3490, Ky. Stats., regulating cities of the fourth class, among other things, provides:

"The council shall have power by ordinance to license or permit, regulate or restrain, the sale of all kinds of liquors within the limits of the city."

It is insisted that this repealed the act of 1890 as to Danville, and we are cited to the case of Brown v. Commonwealth, 98 Ky., 652, as so holding. This is true, as the city of Pineville belongs to the same class as Danville and it was so held as to Pineville. But in the subsequent case of Stamper v. Commonwealth, 102 Ky., 33, the court quoted section 61 of the Constitution, as follows:

"The General Assembly shall by general law provide a means whereby the sense of the people of any county, city, town, district or precinct may be taken as to whether or not spirituous, vinous or malt liquors shall be sold, bartered or loaned or the sale thereof regulated. But nothing herein shall be construed to interfere with or to repeal any law in force relating to the sale or gift of such liquor. All elections on this question may be held on a day other than the regular election days."

It then said:

"That section literally interpreted left all existing local laws, like the one under consideration, relating to the sale or gift of spirituous, vinous or malt liquors, wholly intact and in full operation. But manifestly it was foreseen and intended that in performance of the duty enjoined thereby the General Assembly would necessarily have and exercise the power of making the required general law comprehensive of the whole subject, and enforcible uniformly throughout the Commonwealth. Accordingly a general law was, March 10, 1894, enacted, now contained in chapter 81, Kentucky Statutes, which not only does provide the means whereby the sense of the people of each county, city, town, district or precinct may be taken on the question mentioned, and the mode of ascertaining results of such election; but it is made applicable to and paramount in every such local subdivision of the State in respect to the conditions of holding the elections, and how often they may be held; the class of persons excepted and conditions upon and extent to which they are excepted from operation of the law; and also the manner of enforcing and penalties for vio-

lation of it. If that general law did not have effect to supersede all local laws on the subject the policy of uniformity in character and administration of laws, which was a leading idea of those who framed the Constitution, would be defeated, and subdivision 29 of section 59 of that instrument which provides that in all cases where a general law can be made applicable no special law shall be enacted, would have to be disregarded. The provision in section 61 that nothing therein shall be construed to interfere with or repeal any law in force relating to the sale or gift of such liquors, must not, however, be ignored. And so the inquiry arises, whether it can be reconciled with other provisions of the Constitution, in accordance with which the statute of March 10. 1894, was enacted and exists. We think it can be done so that the general law may remain the sole and supreme law on the subject, and at the same time the purpose of the saving clause be not defeated. It had been the legislative policy prior to adoption of the Constitution to make validity and enforcement of all prohibitory liquor laws dependent upon local option; that is, upon a majority of votes being cast at an election held in the locality affected in favor of such prohibition, and that policy was evidently intended to be continued under the present Constitution, except that the entire subject should be regulated by one general law, instead of conflicting and dissimilar local laws. It thus became necessary, or the framers of the Constitution deemed it necessary, to require, by a mandatory provision in a separate section, the General Assembly to enact a general law for taking the sense of the people in localities named on the question of selling liquors. That being the expressed object of section 61, it must be presumed those who adopted it having in mind, when adding the saving clause only to that subject, intended thereby simply to prevent undoing elections already held in pursuance of the various local laws then existing, not to prevent or hinder enactment of any provisions necessary to a full and complete general law on the subject.

"It thus results the General Assembly has not, even if it could, nullified the effect of the election held under the law applicable to Carter county, and that sale of liquor there is unlawful and will remain so until another election be held, with a different result, according to the provisions of the general law now in force."

The question again came up before the court in

Thompson v. Commonwealth, 103 Ky., 685. The court reiterating this, said:

"The legislative policy prior to the adoption of the Constitution to make validity and enforcement of prohibitory local laws dependent upon local option is as fully subserved by providing for submission to popular vote of all propositions to discontinue existent local prohibitions, as by applying provisions of the general law to localities where such prohibitions had not existed. This view is strengthened by the legislative construction of the constitutional provision given in the general act in question. That act provides for 'taking the sense of the legal voters' of any local subdivision upon the proposition whether liquor shall be sold, bartered or loaned therein; 'or whether or not any prohibition law in force in any county, city, town, district or precinct, by virtue of any general or special act or acts, shall become inoperative, and counties, cities, towns, districts and precincts in which the sale, barter or loan of spirituous, vinous or malt liquors are now prohibited may have a vote thereon under the provisions of this act.' And in section 2560 it is provided, that, notwithstanding at an election held for an entire county the majority of the votes should be cast in favor of the sale of liquor therein, such vote should not render inoperative any special prohibitory act applicable to a portion of the county, 'but such act shall continue in force as if no election had been held.' And the same provision for continuing existent local prohibitions is made as to political subdivisions smaller than a county which had previously, by vote, prohibited the sale of liquor therein, except in cases where, at such county election, the majority of the votes of the smaller subdivision were cast in favor of the sale of liquor. By the same section, where a subdivision smaller than a county, had voted in favor of a sale of liquor therein, such permission was continued in force, notwithstanding the majority of the votes at an election for the entire county were cast against such sale. These provisions clearly indicate the legislative construction of the constitutional provision, and the general legislative policy to be to continue the existing local law as to the sale of liquor in force in each political subdivision, until a majority of the people of such subdivision should, under the general law, express their desire for a change; all existent local prohibitory laws, however, being, as held in the Stamper case, superseded, by the general law, so

as to secure uniformity in character and administration of laws upon the subject."

The principles so announced were followed by this court in Locke v. Commonwealth, 25 R., 76, Adams Express Co. v. Commonwealth, 29 R., 947; Crigler v. Commonwealth, 120 Ky., 512; Ellison v. Commonwealth, 24 Rep., 657. While the case of Brown v. Commonwealth is not overruled in any of these cases, the principle upon which it rests was entirely disregarded. In Brann v. Hart, 97 Ky., 735, the court had before it the question whether section 4205, Ky. Stats., authorizing licenses to be issued by the county court affected local option acts, that section being part of the chapter on revenue and taxation in which by section 4267 all acts and parts of acts in conflict with it were repealed. The court said:

"But it certainly was not intended by that section to repeal any act like the one in question. For the manner in which such an existing statute may be repealed or nullified, as well as the manner in which sale of spiritouos. vinous or malt liquors may be hereafter prohibited in any city, town, county, district or precinct, is expressly provided for in chapter 81, Kentucky Statutes, title of which is 'Local Option Law,' which was intended to and does regulate the whole subject, as provided for in section 61 of the Constitution. And as it does not appear that the act of March 20, 1880, has been repealed or nullified in the manner provided in chapter 81, it must be regarded in full force. Consequently, the county court order granting license to appellant was properly set aside."

The act governing cities of the fourth class is a general law of the State. The act of 1890 was a special act applicable only to Boyle county. The general rule is that a general law does not repeal a previous special act but that the two will be read together. The rule was thus stated in Commonwealth v. Cain, 14 Bush, 525:

"It is a familiar rule of construction both in England and America, that a statute can only be repealed by an express provision of a subsequent law, or by necessary implication. There must be such a positive repugnancy between the provisions of the statutes that they can not stand together or be consistently reconciled. This rule applies when both the statutes are of a general nature. But when one is local in its nature or application, or relates to particular places or persons, and the

other is general, they will both be upheld, and construed as forming one consistent whole.''

This rule was applied under the present Constitution in the case of Louisville v. Louisville Water Co., 105 Ky., 754, where it was held that the charter of the Louisville Water Company was not affected by the act for the government of cities of the first class. It was also applied in Murphy v. City of Louisville, 114 Ky., 764, where it was held that a general act regulating revenue and taxation did not repeal an act exempting cities of the first and second class from the operating of the previous act. We do not see that the case before us can possibly be distinguished from those cited; and we are constrained to hold that local acts prohibiting the sale of intoxicants were not repealed by the general laws for the government of the cities of the State passed pursuant to the Constitution; but that on the contrary, the clear intention of the Constitution as well as the clearly expressed will of the Legislature was that local prohibitory laws should remain in force until voted out by the people themselves. This legislative intention is clearly shown by the original local option act, enacted in August, 1892, which in effect provided that all localities which were then dry, should remain as they were until the majority of the voters of that locality voted for a change. (Sec. 7, Acts 1901-2-3, page 218.) The local option act was approved August 6, 1892. (See Acts 1891-2-3, page 2142.) The act for the government of cities of the fourth class was the work of the same General Assembly and was approved June 28, 1893. (See Acts 1901-2-3, page 1211-1256.) It is well settled that acts of the same General Assembly will be read together as a consistent whole unless there is a necessary conflict between them. But there is no necessary conflict in these acts. On the contrary the clear legislative intent was to preserve existing prohibitory laws. The general law defining the powers of the city council and giving them power to issue licenses is given full effect, when applied to those localities where there was no local prohibitory law in force, and no reason is seen why the same construction which was given section 4267 should not also be given section 3490. It is true the local option act was amended by the act of March 10, 1894, but that act made no change in it, as to the matter in question. The powers conferred by section 3490 upon cities of the fourth class as to the sale of intoxicants were not new.

Similar provisions were contained in the charters of cities of the fourth class then in force. Section 3490 simply continued in force these old provisions providing a general rule for all the cities of that class, in lieu of the special acts theretofore existing. It is true that by section 156 of the Constitution the General Assembly was required to divide the cities of the State into six classes and to define and provide for the powers of each class by general laws, so that all cities of the same class should possess the same powers, and be subject to the same restrictions; but this section must be read in connection with section 61, which provided that nothing herein shall be construed to interfere with or to repeal any law in force in relation to the sale or gift of such liquors. While the cities of the same class must possess the same powers, one city may be wet and another dry; and as held in the cases cited, the legislative construction of the constitutional provision, and the general legislative policy has been "to continue the existing local option law as to the sale of liquor in force in each political subdivision until a majority of the people of such subdivision should under the general law express their desire for a change."

The Legislature may repeal the local option act or may amend it. It has power to repeal any local prohibitory law; but repeals by implication are not favored, and will not be inferred unless the two acts cannot reasonably be read together. While the precise question before us was not noticed in the opinion in the Burdette case, because it was not made by counsel, it was necessarily involved in that case. The defendant there was imprisoned under the local option act and the judgment was affirmed by this court. We are constrained to hold that the case of Brown v. Commonwealth, 98 Ky., 652, is in conflict with the cases we have cited; and so far as it conflicts with them, it is overruled. The case of Pursiful v. Commonwealth, 20 R., 865, and Jett v. Commonwealth, 20 R., 1620, which came up from Pineville, and were decided soon after the Brown case, and upon the authority of that case, are also overruled. The case of Taber v. Lander, 94 Ky., 237, rests upon a different ground. In that case a vote was taken in August, 1884, putting the local option law in effect in a magisterial district which included the town of Hawesville. In April, 1888, the Legislature amended the charter of the town of Hawesville, authorizing the trustees to

issue licenses. It was held that the local act passed in 1888 repealed the local option act as to the town of Hawesville. The decision followed the rule which had been previously laid down in Gifford v. Commonwealth, 2 Rep., 437; but it will be observed that all this took place before the adoption of the new Constitution in 1891, and the rights of the parties were determined by a local act passed before the adoption of the Constitution, and not under the general laws passed pursuant to it. The case of Commonwealth v. Lemon, 25 R. 522, is in all respects similar to Tabor v. Lander. It turned upon an act applicable to the town of Shady Grove, approved April 22, 1884, and the court in its opinion carefully pointed out that the provisions of the Constitution or the laws made pursuant to it did not affect the case, but that it turned upon the local law made before the Constitution was adopted.

We, therefore, conclude that the local option law is in force in Danville, and that section 3490, Kentucky Statutes, had no effect upon a local act in cities where it was in force.

This is ordered to be certified to the circuit court as the law of the case.