## Neutzel, Clerk, etc. v. Williams.

(Decided May 3, 1921).

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Courts—Local or Special Acts Affecting—Jurisdiction.—Section 59 of the Constitution prohibits the enactment of any local or

special act of the legislature affecting the jurisdiction of the courts of justice.

2. Courts—Uniformity of Jurisdiction.—Section 141 of the Constitution requires the jurisdiction of the county courts to be uniform, and regulated by a general law.

3. Courts—Circuit Courts Having One Clerk.—Section 137 of the Constitution, provides, that in a judicial district, composed of one county, and containing a population of 150,000, or over, that the circuit courts shall have but one clerk.

4. Statutes—Elimination of Invalid Provisions.—A statute may contain valid provisions, and provisions, which are unconstitutional, and the invalid provisions may be eliminated, without affecting the valid ones, if the valid provisions are so clearly separable from the invalid ones, that they can stand and be operative without the assistance of the invalid ones.

5. Statutes—When Entire Statute Must Fail.—If the purpose of a statute is to accomplish a single object if some of the provisions are void, unless what are valid, are sufficient to effect the object, the whole must fail.

6. Statutes—Dependent Provisions—When Invalid.—If the valid and invalid provisions of an act of the legislature "are so mutually connected and dependent upon each other as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue, independently, then if some parts are unconstitutional, all of the provisions which will be thus dependent, conditional or connected must fall with them."

J. MATT. CHILTON, County Attorney, and NAT. C. CURETON, Assistant County Attorney, for appellant.

SHACKELFORD MILLER, ALLEN P. DODD, JOHN L. WOODBURY and HARDIN H. HERR for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Affirming.

The question involved upon this appeal is the validity of Chapter 48, Session Acts, 1920. The relief granted by the judgment appealed from was the restraining of the county court clerk from placing upon the ballots to be used in the primary and general elections in the district composed of Jefferson county, the names of any persons as candidates for judge of either the chancery branch, domestic relations division, or judge of the chancery branch, general division, of the circuit court, as provided for by Chapter 48, Acts of the General Assembly of the 1920 Session. The county court clerk has appealed from the judgment.

Chapter 48, *supra,* from its title purports to be an amendatory act of section 1020, Ky. Stats., 1915. The act amends and re-enacts subsections 1, 4, 6 and 7 of section 1020, *supra.* Subsection 1 of section 1020, as enacted in 1912, provides, that in every district entitled to seven circuit judges, in the election for such judges, each shall be voted for separately, and the ballots to be used in the election shall so specify that a voter may vote for a candidate for each of the following designated divisions of the court: Criminal Branch; Chancery Branch, First Division; Chancery Branch, Second Division, and Common Pleas Branches, First, Second, Third and Fourth Divisions, respectively, and the person receiving the highest number of votes designated for judge of any particular division shall be elected judge of that division. The amendment to this section as made by Chapter 48, *supra,* only changes the names by which the Chancery Branches of the court are designated, from Chancery Branch, First Division, and Chancery Branch, Second Division, to Chancery Branch, Domestic Relations Division, and Chancery Branch, General Division.

Subsection 4 of section 1020, *supra,* provided that a circuit court having seven judges should have seven branches, which should be designated criminal branch; chancery branch, first division; chancery branch, second division, and common pleas branches, first, second, third and fourth divisions, respectively. The amendment to this section contained in Chapter 48, *supra,* provided that the chancery branches instead of being designated as first and second divisions, should be designated as chancery branch, domestic relations division, and chancery branch, general division.

Subsection 6 of section 1020, *supra,* provides for the purpose of making up the issues, the assignment of all equitable actions and proceedings to the chancery branches of the court, first and second divisions, an equal number to each, and for the assignment of actions and proceedings not equitable, in equal numbers, to each of the four common pleas divisions of the court. It, also, provided that all criminal proceedings should be in the criminal division and that actions and proceedings in other divisions of the court should be tried in such divisions according to rules of court made in general terms of the court, but the rules must provide for the trial of causes assigned to the common pleas divisions after the

issues are made up and a cause is ready for trial, in any division, which may be disengaged regardless of any previous assignment, and for a reassignment of a cause to another division for trial, whenever the judge of the division to which the cause is sent for trial may deem, that sufficient cause exists therefor. The section as originally enacted authorized the reassignment of equitable causes from either of the chancery divisions to other divisions for trial, when the judge of such division should deem the reason sufficient therefor, but did not require that the rules of the court should be made providing therefor. The section as amended by Chapter 48, *supra,* so far as it is necessary to be quoted to indicate the changes made by the amendment, provides as follows:

"All actions or special proceedings involving divorce or alimony or both, and all cases and matters coming within the terms and provisions of an act entitled, 'An act fixing and defining the powers of the several county courts within this Commonwealth with reference to persons responsible therefor or directly permitting, or contributing to the conditions that render a child dependent, neglected or delinquent, and providing how such powers may be exercised,' approved March nineteenth, nineteen hundred and eight, also, all cases and matters coming within the terms and provisions of an act entitled, 'An act relating to children who are now or may hereafter become dependent, neglected or delinquent, to define these terms and fixing and defining the powers of the several county courts within this Commonwealth with reference to the care, treatment and control of such children, and to provide for the means whereby such powers may be exercised,' approved March nineteenth, nineteen hundred and eight, also, all cases and matters coming within the terms and provisions of an act entitled, 'An act to provide for the punishment of persons responsible for, or directly promoting, or contributing to the conditions that render a child dependent, neglected or delinquent,' approved March 23, 1910, and all actions, cases and matters coming within the terms and provisions of all acts amending these said acts shall be brought or instituted in the chancery branch, domestic relations division, and assigned by the proper clerk to the chancery branch, domestic division. All other equitable actions shall be assigned to the chancery branch, general division.

"For the purpose only of making up the issues, whenever twelve actions or special proceedings not equitable are unassigned, the clerk shall in the presence of one of the judges . . . and assign them to the four divisions of the common pleas branch, giving to the first division the first three drawn, etc.

"The actions and proceedings in the other branches and divisions shall be tried in such branches and divisions according to rules of the court to be made in general term; but the rules shall provide for reassignment of cases and actions assigned to the chancery branch, domestic relations division, and the chancery branch, general division to other divisions when such reassignment is deemed necessary to relieve congested dockets, or for any other reason deemed by the judges in general term to be sufficient, except that it is expressly provided that no divorce case involving children, or other cases involving children, properly belonging to the juvenile session of the domestic relations division, under provisions of this act, shall be transferred or reassigned from this division. The clerk of the county court shall perform all the duties arising out of the said juvenile court acts as now provided by law."

Subsection 7 of section 1020, *supra,* provided that a person, who was elected a judge by ballots marked with the designation of a certain division, should preside in that division during his entire term of office, designating the divisions as the other sections of that act, and the only change effected as to this section by the amendment contained in Chapter 48, *supra,* was to change the names of the chancery divisions from first and second, to domestic relations and general divisions, respectively.

It will be observed that the only alteration in the statute effected by Chapter 48, *supra,* as to the subsections 1, 4 and 7 of section 1020, *supra,* is to change the designations of the two chancery branches of the court from chancery branch, first division and chancery branch, second division to chancery branch, domestic relations division and chancery branch, general division, respectively, and the validity of these amendments will be considered after the validity of the amendment contained in Chapter 48, *supra,* to subsection 6 of section 1020, *supra,* is disposed of.

When subsection 6 of section 1020, *supra,* as amended and re-enacted in Chapter 48, *supra,* is analyzed it is

found that the section as amended differs from the original in the following particulars only.

(1)   It authorizes the circuit court for the district of Jefferson county, to try and determine all causes which arise out of the three acts of the General Assembly enumerated in the section as amended, the jurisdiction to try which was conferred by those three acts exclusively, upon the county courts throughout the Commonwealth and, by inference, attempts to invest the circuit court in Jefferson county, with the jurisdiction of such causes.   They consist of all the causes relating to dependent, neglected and delinquent children, and in the language of the amendment in Chapter 48, ''All cases and matters coming within the terms and provisions of the three acts of the assembly, including the power to penally punish in certain instances the persons who are responsible for or permit or contribute to the conditions, which render a child dependent, neglected or delinquent.''   The jurisdiction of all such causes and matters in every other county is vested in the county courts by the three acts mentioned.

(2)   It undertakes to constitute the county court clerk, the clerk of the circuit court in all the actions and proceedings arising under the three acts of the assembly mentioned.

(3)   It requires the institution of all actions and special proceedings relating to divorce and alimony, and the causes relating to children arising under the three acts mentioned, in the chancery branch, domestic relations divisions, of the court and the assignment of all such to that division, both for the making up of the issues and for trial, and the assignment of all other actions and proceedings cognizable in equity to the chancery branch, general division, of the court, both for making the issues and for trial, instead of an assignment of an equal number of the equity causes to each of the chancery branches, as provided by section 1020, *supra.*

(4)   The amendment and re-enactment provides that to relieve a congested docket, the rules of the court made in general terms shall provide for the reassignment of actions and proceedings from the chancery branches of the court to other divisions, when the reassignment is deemed necessary by the judges of the chancery divisions, but this authority the judges could exercise under rules such as they were authorized to adopt before the enactment of Chapter 48, *supra,* but under the amend-

ment contained in Chapter 48 they are prohibited from transferring from the chancery branch, domestic relations division any action for divorce which involves children, or any other action or proceeding in regard to children which arises under the new subjects of jurisdiction created by the amendment contained in Chapter 48, section 3.

That all that portion of section 3 of Chapter 48, *supra*, which is and purports to be an amendment to subsection 6 of section 1020, and which undertakes to confer jurisdiction upon the circuit court or either of its branches of the actions and proceedings arising under the two juvenile acts of March 19, 1908, and the one of March 23, 1910, and to take away the jurisdiction of such matters from the county court of Jefferson county, is void, because violative of sections 59 and 141 of the Constitution, is too clear for discussion or controversy. That a general law could be constitutionally enacted conferring upon the circuit court the jurisdiction of such matters, there is no doubt, but Chapter 48 applies to only one district and to the county court of one county. Section 59 of the Constitution inhibits the enactment of any local or special act regulating the jurisdiction of the courts of justice, and the result of such constitutional provision is that the jurisdiction of the circuit courts must be uniform, and the legislature is without authority to provide that a circuit court in one district shall have jurisdiction of matters which in the other districts of the state is denied the circuit court and vested in other courts. Section 141 of the Constitution, provides as follows:

"The jurisdiction of the county court shall be uniform throughout the state and shall be regulated by general law . . ." Lynn v. Bullock, 189 Ky. 604; Kilburn v. Chapman, 163 Ky. 136; Stone v. Paducah, 120 Ky. 322.

The portion of section 3 of Chapter 48 which provides that the clerk of the county court shall perform the duties of the clerk of the circuit court with reference to all causes, actions and proceedings growing out of the jurisdiction of juvenile causes, attempted to be conferred upon the circuit court by the section, *supra*, must fail along with the failure of the duties he was to perform under the act. If this were not true, that portion of the act would be void, as section 137 of the Constitution prohibits more than one clerk of the circuit court in a county, containing more than 150,000 inhabitants, and composing

one judicial district, and it is likewise void as in contravention of section 51 of the Constitution, as no mention is made of such proposed legislation in the title to Chapter 48.

When that portion of subsection 3 of Chapter 48, *supra,* which confers upon the chancery branch, domestic relations division, the jurisdiction of ''All cases and matters coming within the terms and provisions'' of the three acts of the General Assembly enumerated in that section, and relating to juveniles, has been held to be void the only things effected by the various sections of Chapter 48, *supra,* in amendment of section 1020 are: (1) To change the names of the chancery branches of the court without changing their jurisdiction or duties in any respect; (2) To require for the purpose of making up the issues and for trial, the assignment of all actions and proceedings for divorce or alimony, or both, to the chancery branch, domestic relations division, and all other causes cognizable in chancery to the chancery branch, general division; and (3) To require that the rules made by the court in general term should authorize in order to relieve congestion in the dockets, or for any other reason which a judge of the chancery division to which an action or proceeding has been assigned, may deem sufficient, to reassign or transfer a cause from that division to another division of the court, except that such actions for divorce, as, also, involve the custody and maintenance of children, should not be transferred from the chancery branch, domestic relations division. The question now arises whether the above provisions of Chapter 48, *supra,* should fall along with the remainder of the act, or should be held operative and enforceable?

No one will dispute the principle that the same statute may contain valid provisions and others that are unconstitutional, and that the invalid sections or provisions may be eliminated without affecting the valid portions, if the valid provisions are so clearly separable from the invalid ones that they can stand and be operative without the assistance of the invalid ones, and this court as well as others, has oftentimes stricken from a statute an unconstitutional section or provision and held the remainder of the act to be operative and enforceable. Commonwealth v. Goldburg, 167 Ky. 96; Rogers v. Jacob, 88 Ky. 502; Smedley v. Commonwealth, 138 Ky. 1; Williams v. Wedding, 165 Ky. 361; Duke v. O'Bryan, 100 Ky. 710;

Gayle v. Owen Co. Court, 83 Ky. 61. There are, however, exceptions to the stated general principle, one of which is, if the purpose of the statute is to accomplish a single purpose, and some of the provisions are void, unless what are valid are sufficient to effect the purpose, the whole must fail. Another exception is stated by Mr. Cooley, in Constitutional Limitations, page 210, as follows:

"And if they (meaning the valid and invalid provisions of the act) are so mutually connected with and dependent on each other as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all of the provisions which will thus be dependent, conditional or connected must fall with them."

The doctrine of the above exceptions is upheld in Commonwealth v. Hatfield, 186 Ky. 423; I. C. R. R. Co. v. Commonwealth, 154 Ky. 332; Pollock v. Farmers Loan & Trust Co., 158 U. S. 601; Spraigue v. Thompson, 118 U. S. 90; Poindexter v. Greenhow, 114 U. S. 270. It seems that it would be a natural presumption, based on common sense, that the legislature having enacted Chapter 48, *supra,* as a whole, that it intended that it should exist and have operation as a whole, and that it did not contemplate the operation of the inconsequential provisions of it which by themselves would be held valid, while the portion of the greatest consequence and the cause and purpose of the enactment should be declared inoperative, because unconstitutional. In other words, if the provisions of the act are of such a character that the court would not be justified in saying that the legislature intended that the valid parts of it should be enforced and operative, although the other parts should fail, the entire act must suffer the same fate as the invalid parts, otherwise the courts would be enforcing a law which the legislature never contemplated nor intended should be enforced. Hence, the validity of the provisions of Chapter 48 which have not been stricken out, because of unconstitutionality, depend upon what the intention of the legislature was in the enactment of that act, and before the provisions of it which are not contrary to the Constitution, can be enforced, it must appear that the legislature would have enacted those provisions of the statute and intended

that they should survive, although with the knowledge
at the time that the chief purpose of the act was inopera-
tive and void.   To determine the intention of the legis-
lature upon this subject, the entire statute may be looked
to and, also, any other statutes enacted by the legislature
upon the same subject at the same session or theretofore
and other incidents connected with its passage.   Greene,
Auditor, v. Taylor, 184 Ky. 742; Board of Council of
Danville v. Raum, 141 Ky. 198; Brown's Extr. v. Greene,
Auditor, 184 Ky. 306; Commonwealth v. Herald Publish-
ing Company, 128 Ky. 433; Commonwealth v. Interna-
tional Harvester Co., 131 Ky. 360; 25 R. C. L. section
286; 35 Cyc. 1151; Peyton v. Mosely, 3 Mon. 80.   The
fact that a portion of the act under consideration is void
or that another act passed by the legislature dealing with
the same subject at the same session is unconstitutional
and void, does not prevent their being looked to to ascer-
tain the intention of the legislature, since such acts and
invalid provisions of the present act were all within its
contemplation at the time of the enactment of the statute
under consideration.   When the other legislation upon
the same subject is looked to, it is found, that at the same
session of the legislature, and preceding the introduction
of the bill which was enacted into Chapter 48, a bill was
offered in the Senate to enact into a law, what is now
Chapter 70 of the Acts of 1920.   Both of these statutes
had their origin in the Senate, and after receiving the
approval of that body, were acted upon favorably in the
House of Representatives, upon the same day, and be-
came in force as statutes upon the same day, although
Chapter 48 was approved by the Governor on the 22nd
of March, while Chapter 70 did not receive his approval
until the following day.   Chapter 70, *supra,* by its terms
repealed the statutes which conferred exclusive jurisdic-
tion upon the county courts of all causes of action and
proceedings which came within the terms and provisions
of the three acts relating to dependent, neglected and de-
linquent children, and persons contributing to their de-
linquency, two of which acts were enacted on March 19,
1908, and the other one on March 23, 1910.   So far as
concerns judicial districts, having populations of 200,000
persons, the only one of which is the district composed of
Jefferson county, Chapter 70, *supra,* conferred the jur-
isdiction of all causes arising under the juvenile acts
upon the circuit court to be exercised by such judge of the

court as might be agreed upon between the judges themselves, or by lot, and in the absence of such judge, by such other one as might be determined upon by lot, and in the absence or inability of all the judges of the circuit court, then by the judge of the county court. Chapter 70, *supra,* has since been held to be unconstitutional and void by this court, in Lynn v. Bullock, 189 Ky. 609. A reading together of Chapter 48 and Chapter 70, *supra,* conclusively demonstrates, that the former statute is based upon the latter, and but for the enactment of the latter the former would have never been enacted at all, as there could have existed no reason or purpose for its enactment, except in contemplation that the provisions of Chapter 70 should be operative. A conclusive reason for this statement is found in the fact that Chapter 48 does not, except by implication, confer jurisdiction to administer the law under the juvenile statutes upon the circuit court, but treats the fact that the circuit court has jurisdiction of such matters, as having already been conferred, as the legislature evidently believed had been done by the enactment of Chapter 70. Chapter 48 applying to the district composed of Jefferson county, and to no other, must have been enacted for the purpose of enabling that court to regulate and to exercise the jurisdiction conferred upon it by Chapter 70, and in fact Chapter 48 does not go beyond that purpose. The intent upon the part of the legislature to segregate for hearing and determination in one division of that court, all causes relating to children, their care, control and disposition, is very plain, and the inclusion of causes of action for divorce and alimony was a mere incident of the jurisdiction attempted to be conferred in regard to the juvenile acts on account of the instances in which the custody and maintenance of children become involved in suits for divorce and maintenance. The fact that the actions for divorce and alimony were added as a mere incident to the jurisdiction concerning neglected, dependent and delinquent children conclusively appears from the provision of Chapter 48, which requires the making of rules authorizing the transfer from the chancery branch, domestic relations division of the court, the actions and proceedings involving alimony and divorce, if the custody or maintenance of children are not involved, and prohibits the transfer from that division of such an action, when the care or maintenance of children are involved, or any action or proceed-

ing arising under the terms, requirements or provisions
of either of the acts relating to delinquent juveniles. Thus
Chapter 48 was dependent for its main and controlling
purpose upon the provisions of Chapter 70, which having
failed because of its unconstitutionality, *in toto,* the main
and controlling purpose of the legislature in enacting
Chapter 48 has likewise failed, and, in this state of case,
there can be no pretense that the valid portions of Chap-
ter 48 will operate as the legislature intended or contem-
plated. It would not be reasonable to hold that the leg-
islature intended that the provisions of the statute, which
are mere incidents to the purpose of its enactment and
designed as administrative features to carry out the pur-
pose of the act should stand, when the main cause of its
enactment and purpose which it meant to carry out has
failed. It is not believeable that the legislature would
have enacted Chapter 48, for the mere purpose of chang-
ing the names of the chancery divisions of the court,
which were appropriate, and giving to them other names,
as nothing could be effected thereby, except the means to
carry out the unconstitutional provisions of the act. The
only purpose or reason, that could be suggested for
changing the statute which required the assignment of
the equitable causes in equal numbers, to each of the
chancery branches, so that only actions relating to di-
vorce and alimony, should be assigned to one branch, and
all other causes of equitable cognizance to the other
branch, was to make room, in one of the branches for
the adjudication of causes, relating to delinquent children
and persons contributing, thereto, and but for the belief
of the legislature, that Chapter 48, would be operative as
to the latter subjects of jurisdiction, it cannot be assumed
that it would have required by law, so unequal a distribu-
tion of burdens, as the act produces, with the unconstitu-
tional provisions eliminated. The requirement of Chap-
ter 48, that the rules of court should provide for the
transfer of causes from the chancery branches to other
branches of the court was only to require the judges to
exercise a power, which they already might exercise, in
their discretion, and was provided for in the statute for
no apparent reason or purpose, except it was contem-
plated, that the addition of the duties of a juvenile court
to that of one of the chancery branches, and the necessity
from such fact of assigning all equitable actions, except
as to divorce and alimony to the other chancery division,

would so burden the chancery divisions, that their dockets would become congested, and if it was not the main, controlling and only real purpose, in enacting Chapter 48, to create out of one of the chancery divisions, a court, with the usual attributes of a juvenile court, why was it provided, that the rules, should provide, that any action for divorce or alimony might be transferred to any other division for trial, except one which involved the custody or maintenance of children? This provision distinctly shows that the legislative intent and purpose were not based upon the idea of segregating the actions for alimony or divorce, in the domestic relations division of the court, except to the extent those actions involved children, and only for the reason, that all actions and matters concerning children were intended to be heard in that division. The purpose of the legislature to create such a juvenile court having failed, it is evident that but for its belief that the provisions of subsection 3, of Chapter 48, and the provisions of Chapter 70 would be operative, it would not have enacted any portion of the former chapter, and the incidental valid provisions of the act must fail with the unconstitutional provisions, as it cannot be said that the legislature had any intention, that any of it should be operative, unless the portion of consequence was so. It may be insisted that section 6, of Chapter 48, providing that it was the intention of the legislature to enact each section of the act separately, and that the invalidity of one section should not affect any other section, ought to be controlling as to the intention of the legislature, and as a result save the valid inconsequential provisions, but, this section is merely evidentiary of intention, and is not controlling, where the act has but one real purpose, which is invalid. In such case the minor details and features of the act providing for its administration must fail along with the purpose of the act. People v. Fox, 128 N. E. 506; Water Power Cases, 148 Wis. 124, 152.

The judgment is therefore affirmed.